℀JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

Tony Williams

**DEFENDANTS**

Corizon Health, Inc., et al. (see next page)

**(b)**  County of Residence of First Listed Plaintiff ___Philadelphia___
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant ___Philadelphia___
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)

Geoffrey Seay, 1315 Walnut Street, Suite 602, Phila., PA 19107
215-893-1480

Attorneys (If Known)

Christopher Rider, Esq., 1515 Arch Street, 14th Floor, Philadelphia, PA 19102   215-683-5444

## II.  BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III.  CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT   (Place an "X" in One Box Only)

### CONTRACT

- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY

- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS

- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☒ 440 Other Civil Rights

### PRISONER PETITIONS

- ☐ 510 Motions to Vacate Sentence
  **Habeas Corpus:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

### FORFEITURE/PENALTY

- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### LABOR

- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### IMMIGRATION

- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

### BANKRUPTCY

- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS

- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY

- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS

- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES

- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V.  ORIGIN   (Place an "X" in One Box Only)

- ☐ 1  Original Proceeding
- ☒ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 USC Sec. 1983

Brief description of cause:

## VII.  REQUESTED IN COMPLAINT:

- ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII.  RELATED CASE(S) IF ANY

(See instructions):

JUDGE  Hon. Legrome Davis

DOCKET NUMBER  12-2412

DATE
12/20/14

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TONY WILLIAMS | : | Civil Action |
| 2018 South Avondale Street | : | |
| Philadelphia, PA 19142, | : | No. |
|         Plaintiff, | : | |
| | : | |
|    v. | : | |
| | : | |
| CORIZON HEALTH, INC. | : | *Formerly* |
| f/k/a PHS CORRECTIONAL HEALTHCARE, INC. | : | COURT OF COMMON PLEAS |
| 105 Westpark Drive, Suite 200 | : | PHILADELPHIA COUNTY |
| Brentwood, TN 37027-5010 | : | |
| | : | OCTOBER TERM, 2013 |
| CITY AND COUNTY OF PHILADELPHIA | : | NO. 201 |
| c/o City of Philadelphia Law Department | : | |
| 1515 Arch Street, 14th Floor | : | |
| Philadelphia, PA 19102-1595; | : | |
| | : | |
| COMMISSIONER LOUIS GIORLA | : | |
| In His Individual and Official Capacities | : | |
| CITY AND COUNTY OF PHILADELPHIA | : | |
| Philadelphia Prison System | : | |
| 7901 State Road | : | |
| Philadelphia, PA 19136; | : | |
| | : | |
| CLYDE D. GAINEY | : | |
| In His Individual and Official Capacities | : | |
| CITY AND COUNTY OF PHILADELPHIA | : | |
| Philadelphia Prison System | : | |
| 7901 State Road | : | |
| Philadelphia, PA 19136; | : | |
| | : | |
| KAREN BRYANT | : | |
| In Her Individual and Official Capacites | : | |
| CITY AND COUNTY OF PHILADELPHIA | : | |
| Philadelphia Prison System | : | |
| Alternative Sentencing Detention | : | |
| 8101 State Road | : | |
| Philadelphia, PA 19136; | : | |
| | : | |
| JOHN P. DELANEY | : | |
| In His Individual and Official Capacities | : | |
| CITY AND COUNTY OF PHILADELPHIA | : | |
| Philadelphia Prison System | : | |
| Curran-Fromhold Correctional Facility | : | |
| 7901 State Road | : | |
| Philadelphia, PA 19136; | : | |
| | : | |
| DR. BRUCE HERDMAN | : | |
| In His Individual and Official Capacities | : | |

CITY AND COUNTY OF PHILADELPHIA                    :
Philadelphia Prison System                          :
7901 State Road                                     :
Philadelphia, PA 19136;                             :
                                                    :
CORRECTIONAL SGT. ANTHONY CHEESEBOROUGH             :
In His Individual and Official Capacities           :
CITY AND COUNTY OF PHILADELPHIA                     :
Philadelphia Prison System                          :
7901 State Road                                     :
Philadelphia, PA 19136;                             :
                                                    :
CFCF CORRECTIONAL OFFICER JAMELL JOYNER             :
In His Individual and Official Capacities           :
CITY AND COUNTY OF PHILADELPHIA                     :
Philadelphia Prison System                          :
7901 State Road                                     :
Philadelphia, PA 19136;                             :
                                                    :
DR. JOSE LUIS BOGGIO                                :
In His Individual and Official Capacities           :
CORIZON HEALTH, INC.                                :
f/k/a PHS CORRECTIONAL HEALTHCARE, INC.             :
Philadelphia Prison System                          :
7901 State Road                                     :
Philadelphia, PA 19136;                             :
                                                    :
DR. MOHAMMED HAQUE                                  :
In His Individual and Official Capacities           :
CORIZON HEALTH, INC.                                :
f/k/a PHS CORRECTIONAL HEALTHCARE, INC.             :
Philadelphia Prison System                          :
7901 State Road                                     :
Philadelphia, PA 19136   ;                          :
                                                    :
MARY SILVA, VICE PRESIDENT                          :
In Her Individual and Official Capacities           :
CORIZON HEALTH, INC.                                :
f/k/a PHS CORRECTIONAL HEALTHCARE, INC.             :
105 Westpark Drive, Suite 200                       :
Brentwood, TN 37027-5010                            :
                                                    :
Dr. EKE KALU, M.D.                                  :
In His Individual and Official Capacities           :
CORIZON HEALTH, INC.                                :
f/k/a PHS CORRECTIONAL HEALTHCARE, INC.             :
105 Westpark Drive, Suite 200                       :
Brentwood, TN 37027-5010                            :
                                                    :
DR. JAMES ARNONE                                    :
In His Individual and Official Capacities           :
CORIZON HEALTH, INC.                                :
f/k/a PHS CORRECTIONAL HEALTHCARE, INC.             :
Philadelphia Prison System                          :

**7901 State Road**                                              :
**Philadelphia, PA 19136;  and**                                :
                              **Defendants.**                   :

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TONY WILLIAMS<br>2018 South Avondale Street<br>Philadelphia, PA 19142,<br>Plaintiff, | : <br> : <br> : <br> : | Civil Action<br><br>No. |
| v. | : <br> : | |
| CORIZON HEALTH, INC.<br>f/k/a PHS CORRECTIONAL HEALTHCARE, INC.<br>105 Westpark Drive, Suite 200<br>Brentwood, TN 37027-5010 | : <br> : <br> : <br> : | *Formerly*<br>COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY |
| CITY AND COUNTY OF PHILADELPHIA<br>c/o City of Philadelphia Law Department<br>1515 Arch Street, 14th Floor<br>Philadelphia, PA 19102-1595; | : <br> : <br> : <br> : <br> : | OCTOBER TERM, 2013<br>NO. 201 |
| COMMISSIONER LOUIS GIORLA<br>In His Individual and Official Capacities<br>CITY AND COUNTY OF PHILADELPHIA<br>Philadelphia Prison System<br>7901 State Road<br>Philadelphia, PA 19136; | : <br> : <br> : <br> : <br> : <br> : | |
| CLYDE D. GAINEY<br>In His Individual and Official Capacities<br>CITY AND COUNTY OF PHILADELPHIA<br>Philadelphia Prison System<br>7901 State Road<br>Philadelphia, PA 19136; | : <br> : <br> : <br> : <br> : <br> : | |
| KAREN BRYANT<br>In Her Individual and Official Capacites<br>CITY AND COUNTY OF PHILADELPHIA<br>Philadelphia Prison System<br>Alternative Sentencing Detention<br>8101 State Road<br>Philadelphia, PA 19136; | : <br> : <br> : <br> : <br> : <br> : <br> : | |
| JOHN P. DELANEY<br>In His Individual and Official Capacities<br>CITY AND COUNTY OF PHILADELPHIA<br>Philadelphia Prison System<br>Curran-Fromhold Correctional Facility<br>7901 State Road<br>Philadelphia, PA 19136; | : <br> : <br> : <br> : <br> : <br> : <br> : | |
| DR. BRUCE HERDMAN<br>In His Individual and Official Capacities | : <br> : | |

CITY AND COUNTY OF PHILADELPHIA                         :
Philadelphia Prison System                              :
7901 State Road                                         :
Philadelphia, PA 19136;                                 :
                                                        :
CORRECTIONAL SGT. ANTHONY CHEESEBOROUGH                 :
In His Individual and Official Capacities               :
CITY AND COUNTY OF PHILADELPHIA                         :
Philadelphia Prison System                              :
7901 State Road                                         :
Philadelphia, PA 19136;                                 :
                                                        :
CFCF CORRECTIONAL OFFICER JAMELL JOYNER                 :
In His Individual and Official Capacities               :
CITY AND COUNTY OF PHILADELPHIA                         :
Philadelphia Prison System                              :
7901 State Road                                         :
Philadelphia, PA 19136;                                 :
                                                        :
DR. JOSE LUIS BOGGIO                                    :
In His Individual and Official Capacities               :
CORIZON HEALTH, INC.                                    :
f/k/a PHS CORRECTIONAL HEALTHCARE, INC.                 :
Philadelphia Prison System                              :
7901 State Road                                         :
Philadelphia, PA 19136;                                 :
                                                        :
DR. MOHAMMED HAQUE                                      :
In His Individual and Official Capacities               :
CORIZON HEALTH, INC.                                    :
f/k/a PHS CORRECTIONAL HEALTHCARE, INC.                 :
Philadelphia Prison System                              :
7901 State Road                                         :
Philadelphia, PA 19136  ;                               :
                                                        :
MARY SILVA, VICE PRESIDENT                              :
In Her Individual and Official Capacities               :
CORIZON HEALTH, INC.                                    :
f/k/a PHS CORRECTIONAL HEALTHCARE, INC.                 :
105 Westpark Drive, Suite 200                           :
Brentwood, TN 37027-5010                                :
                                                        :
Dr. EKE KALU, M.D.                                      :
In His Individual and Official Capacities               :
CORIZON HEALTH, INC.                                    :
f/k/a PHS CORRECTIONAL HEALTHCARE, INC.                 :
105 Westpark Drive, Suite 200                           :
Brentwood, TN 37027-5010                                :
                                                        :
DR. JAMES ARNONE                                        :
In His Individual and Official Capacities               :
CORIZON HEALTH, INC.                                    :
f/k/a PHS CORRECTIONAL HEALTHCARE, INC.                 :
Philadelphia Prison System                              :

7901 State Road                                                    :
Philadelphia, PA 19136;  and                                       :
                       Defendants.                              :

---

## NOTICE OF REMOVAL

**To the Honorable Judges of the United States District Court for the Eastern District of Pennsylvania.**

      Pursuant to 28 U.S.C. § 1441, defendants, Karen Bryant, Correctional Sgt. Anthony Cheeseborough, John P. Delaney, Clyde D. Gainey, Commissioner Louis Giorla, CFCF Correctional Officer Jamell Joyner and City of Philadelphia (hereinafter "petitioners") through their counsel, Christopher Rider, Assistant City Solicitor, respectfully petition for the removal of this action to the United States District Court for the Eastern District of Pennsylvania.  In support thereof, defendants state the following:

      1.    In October, 2013, plaintiff initiated this action by a Complaint in the Court of Common Pleas in Philadelphia, October Term, 2013; No. 201.  (Exhibit A - Complaint).

      2.  On October 8, 2013, said Complaint was served on Petitioners at 1515 Arch Street, 14th Floor, Philadelphia, Pennsylvania.

      3.  Plaintiff alleges that on July 1, 2013, he sustained damages when his civil rights were violated by the defendants. (Exhibit A ).

      4.  This action may be removed to this Court pursuant to 28 U.S.C. § 1441 since Plaintiff's Complaint contains allegations of violations of the plaintiff's Federal Civil Rights and seeks relief under 42 U.S.C. § 1983.  (Exhibit A)

      **Wherefore,** petitioners, Karen Bryant, Correctional Sgt. Anthony Cheeseborough, John P. Delaney, Clyde D. Gainey, Commissioner Louis Giorla, CFCF Correctional Officer Jamell Joyner and City of Philadelphia, respectfully request that the captioned Complaint be removed to the United States District Court for the Eastern District of  Pennsylvania.

Respectfully submitted,

**CHRISTOPHER RIDER**
**Assistant City Solicitor**
**Attorney I.D. No. 307265**
1515 Arch Street, 14th Floor
Philadelphia, PA  19102
215-683-5444

Date: 12/20/14

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | | |
|---|---|---|
| TONY WILLIAMS | : | Civil Action |
| 2018 South Avondale Street | : | |
| Philadelphia, PA 19142, | : | No. |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CORIZON HEALTH, INC. | : | *Formerly* |
| f/k/a PHS CORRECTIONAL HEALTHCARE, INC. | : | COURT OF COMMON PLEAS |
| 105 Westpark Drive, Suite 200 | : | PHILADELPHIA COUNTY |
| Brentwood, TN 37027-5010 | : | |
| | : | OCTOBER TERM, 2013 |
| CITY AND COUNTY OF PHILADELPHIA | : | NO. 201 |
| c/o City of Philadelphia Law Department | : | |
| 1515 Arch Street, 14th Floor | : | |
| Philadelphia, PA 19102-1595; | : | |
| | : | |
| COMMISSIONER LOUIS GIORLA | : | |
| In His Individual and Official Capacities | : | |
| CITY AND COUNTY OF PHILADELPHIA | : | |
| Philadelphia Prison System | : | |
| 7901 State Road | : | |
| Philadelphia, PA 19136; | : | |
| | : | |
| CLYDE D. GAINEY | : | |
| In His Individual and Official Capacities | : | |
| CITY AND COUNTY OF PHILADELPHIA | : | |
| Philadelphia Prison System | : | |
| 7901 State Road | : | |
| Philadelphia, PA 19136; | : | |
| | : | |
| KAREN BRYANT | : | |
| In Her Individual and Official Capacites | : | |
| CITY AND COUNTY OF PHILADELPHIA | : | |
| Philadelphia Prison System | : | |
| Alternative Sentencing Detention | : | |
| 8101 State Road | : | |
| Philadelphia, PA 19136; | : | |
| | : | |
| JOHN P. DELANEY | : | |
| In His Individual and Official Capacities | : | |
| CITY AND COUNTY OF PHILADELPHIA | : | |
| Philadelphia Prison System | : | |
| Curran-Fromhold Correctional Facility | : | |
| 7901 State Road | : | |

Philadelphia, PA 19136;
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
**DR. BRUCE HERDMAN**　　　　　　　　　　　　:
**In His Individual and Official Capacities**　　　　:
**CITY AND COUNTY OF PHILADELPHIA**　　　:
**Philadelphia Prison System**　　　　　　　　　:
**7901 State Road**　　　　　　　　　　　　　　　:
**Philadelphia, PA 19136;**　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
**CORRECTIONAL SGT. ANTHONY CHEESEBOROUGH**　　:
**In His Individual and Official Capacities**　　　　:
**CITY AND COUNTY OF PHILADELPHIA**　　　:
**Philadelphia Prison System**　　　　　　　　　:
**7901 State Road**　　　　　　　　　　　　　　　:
**Philadelphia, PA 19136;**　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
**CFCF CORRECTIONAL OFFICER JAMELL JOYNER**　:
**In His Individual and Official Capacities**　　　　:
**CITY AND COUNTY OF PHILADELPHIA**　　　:
**Philadelphia Prison System**　　　　　　　　　:
**7901 State Road**　　　　　　　　　　　　　　　:
**Philadelphia, PA 19136;**　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
**DR. JOSE LUIS BOGGIO**　　　　　　　　　　　:
**In His Individual and Official Capacities**　　　　:
**CORIZON HEALTH, INC.**　　　　　　　　　　　:
**f/k/a PHS CORRECTIONAL HEALTHCARE, INC.**　:
**Philadelphia Prison System**　　　　　　　　　:
**7901 State Road**　　　　　　　　　　　　　　　:
**Philadelphia, PA 19136;**　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
**DR. MOHAMMED HAQUE**　　　　　　　　　　:
**In His Individual and Official Capacities**　　　　:
**CORIZON HEALTH, INC.**　　　　　　　　　　　:
**f/k/a PHS CORRECTIONAL HEALTHCARE, INC.**　:
**Philadelphia Prison System**　　　　　　　　　:
**7901 State Road**　　　　　　　　　　　　　　　:
**Philadelphia, PA 19136  ;**　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
**MARY SILVA, VICE PRESIDENT**　　　　　　　:
**In Her Individual and Official Capacities**　　　　:
**CORIZON HEALTH, INC.**　　　　　　　　　　　:
**f/k/a PHS CORRECTIONAL HEALTHCARE, INC.**　:
**105 Westpark Drive, Suite 200**　　　　　　　　:
**Brentwood, TN 37027-5010**　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
**Dr. EKE KALU, M.D.**　　　　　　　　　　　　:
**In His Individual and Official Capacities**　　　　:
**CORIZON HEALTH, INC.**　　　　　　　　　　　:
**f/k/a PHS CORRECTIONAL HEALTHCARE, INC.**　:
**105 Westpark Drive, Suite 200**　　　　　　　　:
**Brentwood, TN 37027-5010**　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
**DR. JAMES ARNONE**　　　　　　　　　　　　:

**In His Individual and Official Capacities**  :
**CORIZON HEALTH, INC.**                       :
**f/k/a PHS CORRECTIONAL HEALTHCARE, INC.**     :
**Philadelphia Prison System**                 :
**7901 State Road**                            :
**Philadelphia, PA 19136;  and**               :
                              **Defendants.**  :

## <u>NOTICE OF FILING OF REMOVAL</u>

TO:   Geoffrey V. Seay, Esquire
      1315 Walnut Street, Suite 602
      Philadelphia, PA 19107

     PLEASE TAKE NOTICE THAT on December 23, 2013, defendants, Karen Bryant, Correctional Sgt. Anthony Cheeseborough, John P. Delaney, Clyde D. Gainey, Commissioner Louis Giorla, CFCF Correctional Officer Jamell Joyner and City of Philadelphia filed, in the office of the Clerk of the United States District Court for the Eastern District of Pennsylvania a verified Notice of Removal.

     A copy of this Notice of Removal is attached hereto and is also being filed with the Clerk of the Court of Common Pleas of Philadelphia County, pursuant to Title 28, United States Code, Section 1446(e).

 

**CHRISTOPHER RIDER**
**Assistant City Solicitor**
**Attorney I.D. No. 307265**
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA  19102
215-683-5444

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TONY WILLIAMS | : | Civil Action |
| 2018 South Avondale Street | : | |
| Philadelphia, PA 19142, | : | No. |
|         Plaintiff, | : | |
| | : | |
|    v. | : | |
| | : | |
| CORIZON HEALTH, INC. | : | *Formerly* |
| f/k/a PHS CORRECTIONAL HEALTHCARE, INC. | : | COURT OF COMMON PLEAS |
| 105 Westpark Drive, Suite 200 | : | PHILADELPHIA COUNTY |
| Brentwood, TN 37027-5010 | : | |
| | : | OCTOBER TERM, 2013 |
| CITY AND COUNTY OF PHILADELPHIA | : | NO. 201 |
| c/o City of Philadelphia Law Department | : | |
| 1515 Arch Street, 14th Floor | : | |
| Philadelphia, PA 19102-1595; | : | |
| | : | |
| COMMISSIONER LOUIS GIORLA | : | |
| In His Individual and Official Capacities | : | |
| CITY AND COUNTY OF PHILADELPHIA | : | |
| Philadelphia Prison System | : | |
| 7901 State Road | : | |
| Philadelphia, PA 19136; | : | |
| | : | |
| CLYDE D. GAINEY | : | |
| In His Individual and Official Capacities | : | |
| CITY AND COUNTY OF PHILADELPHIA | : | |
| Philadelphia Prison System | : | |
| 7901 State Road | : | |
| Philadelphia, PA 19136; | : | |
| | : | |
| KAREN BRYANT | : | |
| In Her Individual and Official Capacites | : | |
| CITY AND COUNTY OF PHILADELPHIA | : | |
| Philadelphia Prison System | : | |
| Alternative Sentencing Detention | : | |
| 8101 State Road | : | |
| Philadelphia, PA 19136; | : | |
| | : | |
| JOHN P. DELANEY | : | |
| In His Individual and Official Capacities | : | |
| CITY AND COUNTY OF PHILADELPHIA | : | |
| Philadelphia Prison System | : | |
| Curran-Fromhold Correctional Facility | : | |
| 7901 State Road | : | |
| Philadelphia, PA 19136; | : | |
| | : | |
| DR. BRUCE HERDMAN | : | |

In His Individual and Official Capacities        :
CITY AND COUNTY OF PHILADELPHIA                  :
Philadelphia Prison System                       :
7901 State Road                                  :
Philadelphia, PA 19136;                          :
                                                 :
CORRECTIONAL SGT. ANTHONY CHEESEBOROUGH          :
In His Individual and Official Capacities        :
CITY AND COUNTY OF PHILADELPHIA                  :
Philadelphia Prison System                       :
7901 State Road                                  :
Philadelphia, PA 19136;                          :
                                                 :
CFCF CORRECTIONAL OFFICER JAMELL JOYNER          :
In His Individual and Official Capacities        :
CITY AND COUNTY OF PHILADELPHIA                  :
Philadelphia Prison System                       :
7901 State Road                                  :
Philadelphia, PA 19136;                          :
                                                 :
DR. JOSE LUIS BOGGIO                             :
In His Individual and Official Capacities        :
CORIZON HEALTH, INC.                             :
f/k/a PHS CORRECTIONAL HEALTHCARE, INC.          .:
Philadelphia Prison System                       :
7901 State Road                                  :
Philadelphia, PA 19136;                          :
                                                 :
DR. MOHAMMED HAQUE                               :
In His Individual and Official Capacities        :
CORIZON HEALTH, INC.                             :
f/k/a PHS CORRECTIONAL HEALTHCARE, INC.          :
Philadelphia Prison System                       :
7901 State Road                                  :
Philadelphia, PA 19136  ;                        :
                                                 :
MARY SILVA, VICE PRESIDENT                       :
In Her Individual and Official Capacities        :
CORIZON HEALTH, INC.                             :
f/k/a PHS CORRECTIONAL HEALTHCARE, INC.          :
105 Westpark Drive, Suite 200                    :
Brentwood, TN 37027-5010                         :
                                                 :
Dr. EKE KALU, M.D.                               :
In His Individual and Official Capacities        :
CORIZON HEALTH, INC.                             :
f/k/a PHS CORRECTIONAL HEALTHCARE, INC.          :
105 Westpark Drive, Suite 200                    :
Brentwood, TN 37027-5010                         :
                                                 :
DR. JAMES ARNONE                                 :
In His Individual and Official Capacities        :
CORIZON HEALTH, INC.                             :
f/k/a PHS CORRECTIONAL HEALTHCARE, INC.          :

Philadelphia Prison System                                  :
7901 State Road                                             :
Philadelphia, PA 19136; and                                :
               Defendants.                :

## CERTIFICATE OF SERVICE

     I, Christopher Rider, Assistant City Solicitor, do hereby certify that a true and correct copy of the attached Notice of Removal has been served upon the following by First Class Mail, postpaid, on the date indicated below:

TO:    Geoffrey V. Seay, Esquire
        1315 Walnut Street, Suite 602
        Philadelphia, PA 19107

 

**CHRISTOPHER RIDER**
**Assistant City Solicitor**
**Attorney ID No. 307265**
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA  19102
215-683-5444

Date: 12/20/14

Exhibit "A"

IN THE COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY
CIVIL TRIAL DIVISION



TONY WILLIAMS                                    )
2018 South Avondale Street                       )
Philadelphia, PA 19142                           )
        Plaintiff,                       )
                                                 )
                                                 )   OCTOBER TERM, 2013
    v.                                          )
                                                 )   No. 201
                                                 )
CORIZON HEALTH, INC.                             )
f/k/a PHS CORRECTIONAL HEALTHCARE, INC.          )
105 Westpark Drive, Suite 200                    )
Brentwood, TN 37027-5010                         )
                                                 )
CITY AND COUNTY OF PHILADELPHIA                  )
c/o City of Philadelphia Law Department          )
1515 Arch Street, 14th Floor                     )
Philadelphia, PA 19102-1595;                     )
                                                 )
COMMISSIONER LOUIS GIORLA                        )
In His Individual and Official Capacities        )
CITY AND COUNTY OF PHILADELPHIA                  )
Philadelphia Prison System                       )
7901 State Road                                  )
Philadelphia, PA 19136;                          )
                                                 )
CLYDE D. GAINEY                                  )
In His Individual and Official Capacities        )
CITY AND COUNTY OF PHILADELPHIA                  )
Philadelphia Prison System                       )
7901 State Road                                  )
Philadelphia, PA 19136;                          )
                                                 )
KAREN BRYANT                                     )
In Her Individual and Official Capacities        )
CITY AND COUNTY OF PHILADELPHIA                  )
Philadelphia Prison System                       )
Alternative Sentencing Detention                 )
8101 State Road                                  )

Case ID: 131000201

Philadelphia, PA 19136;                                              )
                                                                     )
JOHN P. DELANEY                                                      )
In His Individual and Official Capacities                            )
CITY AND COUNTY OF PHILADELPHIA                                      )
Philadelphia Prison System                                           )
Curran-Fromhold Correctional Facility                                )
7901 State Road                                                      )
Philadelphia, PA 19136;                                              )
                                                                     )
DR. BRUCE HERDMAN                                                    )
In His Individual and Official Capacities                            )
CITY AND COUNTY OF PHILADELPHIA                                      )
Philadelphia Prison System                                           )
7901 State Road                                                      )
Philadelphia, PA 19136;                                              )
                                                                     )
CORRECTIONAL SGT. ANTHONY CHEESEBOROUGH                              )
In His Individual and Official Capacities                            )
CITY AND COUNTY OF PHILADELPHIA                                      )
Philadelphia Prison System                                           )
7901 State Road                                                      )
Philadelphia, PA 19136;                                              )
                                                                     )
CFCF CORRECTIONAL OFFICER JAMELL JOYNER[1]                           )
In His Individual and Official Capacities                            )
CITY AND COUNTY OF PHILADELPHIA                                      )
Philadelphia Prison System                                           )
7901 State Road                                                      )
Philadelphia, PA 19136;                                              )
                                                                     )
DR. JOSE LUIS BOGGIO                                                 )
In His Individual and Official Capacities                            )
CORIZON HEALTH, INC.                                                 )
f/k/a PHS CORRECTIONAL HEALTHCARE, INC.                              )
Philadelphia Prison System                                           )
7901 State Road                                                      )
Philadelphia, PA 19136;                                              )
                                                                     )
DR. MOHAMMED HAQUE                                                   )
In His Individual and Official Capacities                            )
CORIZON HEALTH, INC.                                                 )
f/k/a PHS CORRECTIONAL HEALTHCARE, INC.                              )
Philadelphia Prison System                                           )

---

[1]Previously identified as a "John Doe."

2

Case ID: 131000201

7901 State Road )
Philadelphia, PA 19136; )
)
MARY SILVA, VICE PRESIDENT )
In Her Individual and Official Capacities )
CORIZON HEALTH, INC. )
f/k/a PHS CORRECTIONAL HEALTHCARE, INC. )
105 Westpark Drive, Suite 200 )
Brentwood, TN 37027-5010 )
)
Dr. EKE KALU, M.D. )
In His Individual and Official Capacities )
CORIZON HEALTH, INC. )
f/k/a PHS CORRECTIONAL HEALTHCARE, INC. )
105 Westpark Drive, Suite 200 )
Brentwood, TN 37027-5010 )
)
DR. JAMES ARNONE )
In His Individual and Official Capacities )
CORIZON HEALTH, INC. )
f/k/a PHS CORRECTIONAL HEALTHCARE, INC. )
Philadelphia Prison System )
7901 State Road )
Philadelphia, PA 19136; and )
                    Defendants. )

## CIVIL ACTION COMPLAINT

This is a civil action brought by Plaintiff, Tony Williams seeking damages and punitive damages against the named Defendants, for violations of his rights under state law.

## I. JURISDICTION

1.   All events alleged herein occurred in Philadelphia County, Pennsylvania.

## II. EXHAUSTION

2.   To the extent that Plaintiff was required to exhaust any administrative remedies, he has exhausted those remedies.

3

## III. PARTIES

3. Plaintiff hereby incorporates by reference, Paragraphs 1 through 2, as though they are fully set forth herein.

4. Plaintiff, Tony Williams ("Mr. Williams" or "Plaintiff"), is an African-American male adult resident of the Commonwealth of Pennsylvania, whose address is set forth in the caption. At all times relevant here, Mr. Williams was held in the City and County of Philadelphia Prison System's ("PPS") Alternative Sentence Detention ("ASD"), ASD RHU-MOD-3, Detention Center ("DC") and Curran-Fromhold Correctional Facility ("CFCF").

5. Defendant, CORIZON HEALTH, INC. ("Defendant CORIZON"), is a Delaware corporation with its principal place of business in Brentwood, Tennessee. At all times relevant to this lawsuit, Defendant CORIZON held a contract to provide all medical services to inmates in the PPS, and was under the direct control and supervision of Defendant CITY OF PHILADELPHIA.

6. Defendant, CITY AND COUNTY OF PHILADELPHIA ("Defendant CITY OF PHILADELPHIA")[2], is a municipality organized by and through the Commonwealth of Pennsylvania that directs, manages and controls the Philadelphia Prison System ("PPS"), and employs Defendants, Herdman, Giorla, Delany, Bryant, Gainey, Cheeseborough, Joyner and by and through Defendant, CORIZON HEALTH, INC. and its employees and contractors.

7. Defendant, Commissioner Louis Giorla ("Defendant Giorla"), is the Commissioner of the PPS; he is being sued in his individual and official capacities.

---

[2]At times herein, the City of Philadelphia and its prison employees will be referred to as the "MUNICIPAL Defendants," collectively.

4

8. Defendant, Clyde D. Gainey ("Defendant Gainey"), is the Deputy Commissioner For Facility Operations at PPS; he is being sued in his individual and official capacities.

9. Defendant, Warden John Delaney ("Defendant Delaney"), is the Warden at CFCF; he is being sued in his individual and official capacities.

10. Defendant, Warden Karen Bryant ("Defendant Bryant"), is the Warden at ASD; she is being sued in her individual and official capacities.

11. Defendant, Dr. Bruce Herdman ("Defendant Dr. Herdman"), is the Chief Medical Officer of the Philadelphia Prison System ("PPS"); he is being sued in his individual and official capacities.

12. Defendant, Correctional Sgt. Anthony Cheeseborough ("Defendant Sgt. Cheeseborough"), is a supervisory PPS Correctional Officer at ASD; he is being sued in his individual and official capacities.

13. Defendant, Correctional Officer Jamell Joyner ("Defendant Correctional Officer Joyner"), is a male PPS Correctional Officer at CFCF; he is being sued in his individual and official capacities.

14. Defendant, Dr. Jose Luis Boggio, M.D. ("Defendant BOGGIO"), was a Medical Doctor employed by CORIZON HEALTH, INC. at PPS; he is being sued in his individual and official capacities.

15. Defendant, Dr. Mohammed Haque ("Defendant Dr. Haque"), was acting as an agent, servant, and/or employee of Defendant CORIZON HEALTH, INC.; he is being sued in his individual and official capacities because he personally subjected Plaintiff to the unlawful actions and conditions described in this Complaint.

5

16. Defendant, Dr. Eke Kalu, M.D. ("Defendant KALU"), is a Regional Medical Director at CORIZON at CFCF; he is being sued in his individual and official capacities.

17. Defendant, Mary Silva ("Defendant Silva"), was acting as an agent, servant, and/or employee of Defendant CORIZON HEALTH, INC.; she is being sued in her individual and official capacities because he personally subjected Plaintiff to the unlawful actions and conditions described in this Complaint.

18. Defendant, Dr. James Arnone ("Defendant Dr. Arnone"), was acting as an agent, servant, and/or employee of Defendant CORIZON HEALTH, INC.; he is being sued in his individual and official capacities because he personally subjected Plaintiff to the unlawful actions and conditions described in this Complaint.

## IV. FACTS

**A Deplorable Culture of Corporate Negligence, Medical Malpractice and Deliberate Indifference In The Mistreatment of Prisoners By PHS Correctional Healthcare, Inc. and CORIZON**

19. Plaintiff hereby incorporates by reference, Paragraphs 1 through 19, as though they are fully set forth herein.

20. At all times relevant hereto, the MUNICIPAL Defendants were responsible for the health, safety, well-being and provision of health care to Plaintiff while he was a prisoner at PPS, and Defendant CORIZON HEALTH, INC. was the MUNICIPAL Defendants' health care provider to Plaintiff while he was a prisoner at PPS.

21. Upon reasonable information and belief, Plaintiff avers that CORIZON and "PHS has been sued repeatedly for failure to treat inmates' health problems and has incurred over 100 million dollars in failure-to-treat claims" between 2001 and 2010, which includes

6

numerous failure-to-treat cases from PPS because between 2001 and 2010 CORIZON
and PHS settled hundreds of failure-to-treat cases at PPS.

22.    Upon reasonable information and belief, Plaintiff avers that by the time the MUNICIPAL
Defendants entered the contract with Defendant CORIZON that resulted in the injuries to
Plaintiff, they knew of Defendant CORIZON'S history of negligence, malfeasance, de-
liberate indifference and fraud, but simply ignored it and contracted with the company.

23.    Upon reasonable information and belief, Plaintiff avers that during the relevant period of
time, there were monthly meetings between inmate representatives and Defendants
GIORLA, HERDMAN, DELANEY, GAINEY, SILVA, KALU and other policy and de-
cision makers from Defendant CORIZON such as Richard Hallworth, Rebecca Pinney,
Kevin Brice, Dennis Wade, Marie Moise and Vandelyn Phillips are known as the "*Build-
ing Representative Committee, C.F.C.F., Philadelphia, PA 19136 Warden's Monthly
Meeting*," chaired by high ranking PPS officials and, ultimately, Defendant GIORLA.

24.    Upon reasonable information and belief, Plaintiff avers that during those meetings, the
inmate representatives repeatedly discussed the failure to treat numerous types of injuries,
including, broken bones and muscular-skeletal injuries and the lack of physical therapy at
CFCF.

25.    Upon reasonable information and belief, Plaintiff avers that Richard HALLWORTH, as
CORIZON HEALTH, INC.'s CEO, is responsible for recruiting and hiring CORIZON
executives at PPS such as Defendants SILVA (Vice President), KALU (Regional Medi-
cal Director), who are policy and decision-makers, and employees at PPS such as De-
fendants BOGGIO, HAQUE and ARNONE, who were in various capacities actively in-
volved in the day-to-day provision of medical care to him.

7

26. Upon reasonable information and belief, Plaintiff avers that HALLWORTH, and other CORIZON executives, PINNEY and PERSELAY were personally involved in the delivery of medical services to inmates at PPS because they made numerous site visits to PPS; were personally provided with the notes from the monthly meetings and engaged in numerous separate meeting in Tennessee and Philadelphia where the quality of healthcare to inmates at PPS were repeatedly discussed; but Defendants did nothing to correct the inadequacies in medical care, particularly those related to the care of inmates with serious orthopedic injuries.

27. In May 2010, PHS Correctional Healthcare, Inc. ("PHS") was the provider of healthcare throughout the PPS.

28. Defendant, CORIZON, is a newly formed company as the result of merger between PHS Correctional Healthcare, Inc. (American Service Group, Inc.) and Correctional Medical Services (Valitás Health Services, Inc.).

29. According to the Wall Street Journal, at the time of the merger, the combined company had about 11,000 employees and revenues of more than $1.4 Billion.

30. According to PHS Correctional Healthcare, Inc. and Correctional Medical Services, the new company, CORIZON:

> Brings together today's best-in-class correctional healthcare companies with the vision and commitment to become even better tomorrow... Within the talented people and systems of Corizon are a wealth of expertise, the latest in methodology and technology, and economies of scale – all working on behalf of the clients we serve and the patients in our care.
>
> Is firmly centered around service – to our clients, our patients and our employees... the insight of unparalleled experience assisting our client partners, and caring professionals serving the unique healthcare needs of patients.
>
> Provides quality healthcare services at over 400 correctional facilities across the country serving approximately 400,000 inmates in 31 states.

8

31. Upon reasonable information and belief, Plaintiff avers however, the truth of the matter is that PHS Correctional Healthcare, Inc., American Service Group, Inc., Correctional Medical Service, and Valitás Health Services, Inc. now, CORIZON HEALTH, INC., have a deplorable record of corporate negligence, medical malpractice and deliberate indifference in the provision of health care services to prisoners and pretrial detainees throughout the United States and has a history and a reputation of customarily cutting corners in prisoner health care to maintain high profits.

32. At all times relevant hereto, Defendant, CORIZON f/k/a PHS, engaged in Interstate Commerce.

33. Since 1991, the companies that make up CORIZON HEALTH, INC. have been sued more than 9,000 times for corporate negligence, medical malpractice and deliberate indifference in the provision of health care services to prisoners and pretrial detainees.

34. In Philadelphia County, CORIZON HEALTH, INC.'s, companies have been sued more than 800 times for corporate negligence, medical malpractice and deliberate indifference in the provision of health care services to prisoners and pretrial detainees.

35. In response to the large number of lawsuits, and taking absolutely no responsibility for the culture of medical malpractice, corporate negligence and deliberate indifference in the provision of health care services to prisoners and pretrial detainees, one of the company's lawyers deadpanned that that number of lawsuits were due to inmates having "access to the law library and a lot of time on their hands."

36. Nationwide, CORIZON HEALTH, INC.'s corporate negligence, medical malpractice and deliberate indifference in the provision of health care services to prisoners and pretrial detainees has been well documented.

9

a. In 1995, a federal court monitor in Pinellas County, Florida found that PHS provided "inadequate medical care despite a federal judge's orders and the sheriff's insistence" – this report was part of an investigation into the death 46-year-old Diane C. Nelson who died of a heart attack when PHS medical staff refused to give her heart medication.

b. On July 18, 1996, The New York Times reported that EMSA Correctional Care's $10.2 Million contract with Westchester County Jail was cancelled after a 17-year-old female patient committed suicide shortly after an EMSA psychiatrist stopped her antidepressant medications.

c. On May 31, 1996, after an investigation into the death of an inmate at the Santa Barbara County Mail Jail, a County Grand Jury found:

   1) PHS drastically reduced its offer by $96,000.00 per contract year to acquire a contract to deliver health care services to county inmates;

   2) PHS failed to provide a procedure manual and operation protocol for the county jail.

   3) PHS failed to provide nurse staffing levels in accord with the terms of the contract and actually lowered the staffing levels without the county's knowledge;

   4) PHS failed to deliver certain on-site services at another county jail;

   5) PHS had not attained the necessary medical accreditations from the California Medical Association;

   6) PHS was assessed a $25,000.00 penalty for not being accredited;

   7) PHS failed to provide 14-Day health appraisals of county inmates in accord with the terms of the contract; and

10

Case ID: 131000201

8)   PHS failed to examine pregnant inmates in a timely manner, if at all.

d.   A 1998 in-depth investigative report by the *St. Louis Post-Dispatch*, CORIZON'S hometown newspaper, shed light on the downside of prison care privatization. The *St. Louis Post-Dispatch*'s investigative team spent five months "visiting prisons and jails; gathering hundreds of police, court and medical records and other documents; and interviewing doctors, nurses, inmates, lawyers, scholars, prison and health experts and families of inmates who died behind bars." Published in September 1998, "Death, Neglect and the Bottom Line: Push to Cut Costs Poses Risks," found that while CMS successfully reduced the cost of health care to several states, there were "more than 20 cases in which inmates allegedly died as a result of negligence, indifference, understaffing, inadequate training or overzealous cost-cutting."

e.   In 1998, the Minnesota Department of Corrections contracted with CMS for health care services in its state's prisons. According to the *Twin Cities Independent Media Center*, the local chapter of the NAACP called a press conference in mid-October 2001 to publicize a lawsuit "over the death of Gregory Jennings, who died in Stillwater prison on April 6, 2001 because the medical staff was indifferent to his complaints of symptoms of diabetes."

f.   In 1999, after 19-year-old Georgia county prison inmate, Alfonza Robertson, died of either an aneurysm or a blood clot, his grandmother complained that PHS neglected her grandson and "let [him] lay there and die like an animal without just listening to [him];"

g.   In late-January 2001, the ACLU posted on its website a late-January 2001 letter it sent to the Connecticut Department of Correction (CDOC) that claims CMS's health

11

care services -- medical, mental health and dental care -- at the Wallens Ridge State Prison in Big Stone Gap, Virginia is woefully "inadequate." The ACLU writes: "The health care provided by Correctional Medical Services, the contract provider at [Wallens Ridge], was considered so grossly inadequate that [Virginia Department of Corrections] recently fined CMS nearly one million dollars. The Virginia State Auditor specifically found that CMS did not provide a dentist at [Wallens Ridge] for over three months, and never provided an optometrist. Medical privacy and confidentiality is non-existent at [Wallens Ridge]; as a matter of policy, prisoners are required to discuss their most private medical and mental health issues in the presence of security staff and other prisoners."

h.  In 2004, PHS was sued for the death a premature infant that was born at a Florida county jail;

i.  In 2004, the Florida Attorney General demanded that PHS and American Service Group, Inc. repay more than $3.25 Million Dollars in fraudulent Medicare claims;

j.  In 2004, while under PHS's care, Florida county jail inmate Patrick Bilello died of severe emaciation and anemia;

k.  In 2005, CORIZON's negligent hiring a medical director was cited as the chief reason for the death of 47-year-old Arkansas county prison inmate, Larry Morris, Sr. In their complaint, the plaintiffs alleged that the doctor was "incompetent and indifferent to patients' need." Ironically, the dismissed medical director, Dr. Craig Bardell was cited for medical malpractice in 2002 Pennsylvania prison lawsuit that was settled for $2.15 Million Dollars;

Case ID: 131000201

l. On February 27, 2005, *The New York Times* published "Harsh Medicine: As Health Care Goes Private, 10 Days Can Be Death Sentence," outlining numerous lapses in medical treatment by PHS's employees that lead to numerous inmate deaths in several states.

m. On March 7, 2005, in response to *The New York Times* article, then-PHS Chairman, Michael Catalano deadpanned: "[W]e learn from mistakes and take proper corrective action as part of our continuous quality improvement process."

n. On August 1, 2005, *The New York Times* published another article reminding the public of PHS's "turbulent record in many of the 33 states where it has provided jail or prison medicine." There, *The New York Times* focuses the lack of treatment for H.I.V. patients in the Alabama prison system by PHS and the fact that PHS had been fined $580,000.00 by the state of Alabama for failing to meet performance standards.

o. On August 15, 2005, a Committee of The Association of the Bar of the City of New York opined:

> The Committee is, of course, particularly disturbed by the description of suicides of persons with mental health conditions who were allowed to deteriorate and decompensate while held in an environment in which Prison Health was the sole provider of healthcare services....

> Reckless and unprincipled in its corporate pursuits, irrespective of patient care, and added that [t]he lack of credentials, lack of training, shocking incompetence and outright misconduct of the doctors and nurses in that particular case were emblematic of P.H.S., Inc.'s conduct as a business corporation, holding himself out as a medical care provider while seemingly bereft of any quality control.

> That corporation has consistently followed a practice of providing inadequate services for the purpose of reducing expenses, and ... numerous fatalities have resulted from this practice. Obviously, the Committee has become very concerned that, among other things, inmates with serious mental illnesses are being overlooked for the sake of cutting costs.

13

p. On June 21, 2006, *The Billings Gazette* reported that the State of Wyoming paid $50,000 to settle a federal lawsuit brought by a former Wyoming prison inmate who blamed the state Department of Corrections and a private company, Correctional Medical Services, that provided medical care to inmates for the loss of his lower right leg.  Former inmate, Salvatore Lucido, a diabetic, filed the lawsuit in April 2004 alleging that he developed sores on his feet when the medical staff at the state prison in Rawlins refused to give him appropriate shoes.  Lucido claimed that Correctional Medical Services and prison officials delayed taking him to a hospital where his foot might have been saved.

q. On October 18, 2006, the State of Florida Office of Inspector General's Bureau of Internal Audit issued the findings of its audit of Prison Health Service's contract (Contract Number S6149 – Prison Health Services at Taylor CI) wherein it concluded that PHS owed the state a refund of $579,631.00 in inmate per diem overpayments for inmates that were not housed at the prison, but for whom the state was billed by PHS.

r. In 2007, 50-year-old Florida county jail inmate, James Johnson was taken off "legally prescribed medicals he had taken for years for his clinical depression, including the anti-depressant Paxil, anti-psychotic Seroquel and the sedative Trazodone" by PHS medical staff.  Shortly thereafter, Johnson attempted to commit suicide by running into the concrete walls of his cell – headfirst.

s. On June 7, 2007, *The St. Louis Post-Dispatch* reported that, according to a blistering report by the fire department, a delay in letting paramedics into the city jail and "substandard" emergency care by Correctional Medical Services' staff there may have doomed an inmate who suffered an asthma attack,. One of the paramedics who treat-

14

ed LaVonda Kimble early April 11, 2007 wrote of commonly encountering delays and apathy on calls to the St. Louis Justice Center.

t.   On June 8, 2007, a County Circuit Court in Virginia found that a *pro se* inmate was a third-party beneficiary to the contract for medical services between PHS and the Commonwealth of Virginia, and permitted his breach of contract and cruel and unusual punishment claims to proceed to trial.

u.   In 2009, 23-year-old Vermont state prison inmate Ashley Ellis died because PHS failed to stock potassium and woefully understaffed the prison's medical unit – all Defendants settled that lawsuit.

v.   On September 30, 2009, *The News Journal* of Wilmington, Delaware reported, that despite spending more than $130 million over three years, Delaware's prison system continues to provide health care to inmates that falls short of federal requirements, according to a report issued by an independent monitor.  The State of Delaware entered into the agreement with the federal government following a series of articles in 2005 by *The News Journal* that pointed to problems with prison health care and high inmate death rates, especially from AIDS. Other findings by the newspaper's six-month investigation included an outbreak of flesh-eating bacteria and an inmate's massive brain tumor -- largely ignored by staff -- which led to his death.  Problems listed in a 210-page report include a "lack of stable and effective leadership" by CORIZON, an ongoing problem listed in previous reports.  Other problems cited include shortages of mental health counselors and psychiatrists, incomplete annual staffing plans, poor treatment plans and a continued lack of space that results in inad-

equate privacy. In response, CORIZON officials said in an e-mail they were review-
ing the monitor's findings and recommendations.

w. On October 14, 2009, *The News Journal* of Wilmington, Delaware reported, that after
years of criticism and a federal investigation, state officials announced they will let
their contract with Correctional Medical Services ("CMS") expire and try to find a
new provider.  The Delaware Department of Correction announced it will take bids
for a new contract with modifications it hopes will provide better care, including
breaking the contract into smaller pieces to allow multiple companies to provide more
specialized service.  The new contract will also have a "shared risk," with the DOC
paying for certain costs in order to prevent medical providers from limiting inmate
care in order to maximize their profits.  "The Department of Correction has used the
last few months to prepare for and make an informed decision about this [Request for
Proposals]," Commissioner of Correction Carl Danberg said.  "We have reviewed the
best practices from other states and interviewed medical experts from around the
country in an effort to develop a better contracting model for prison health services.
In addition, the department has interviewed correctional health-care professionals to
identify and eliminate the impediments to competition, which existed in previous con-
tracts."  The Delaware DOC has come under scrutiny for its care of inmates in Dela-
ware prisons. Delaware entered into the agreement with the federal government fol-
lowing a series of articles in 2005 by *The News Journal* that pointed to problems with
prison health care and high inmate death rates, especially from AIDS.  Other findings
by the newspaper's six-month investigation included an outbreak of flesh-eating bac-
teria and an inmate's massive brain tumor – largely ignored by staff – which led to his

16

death.  Independent reports as a result of the agreement with the federal government repeatedly pointed out that CMS suffers from a "lack of stable and effective leadership."

x.  On July 18, 2010, *The New York Times* reported that a PHS doctor, Dr. Trevor P. Parks, "in charge of medical care for 12,000 New York City jail inmates abruptly resigned last week after questions arose about his professional certification." During the doctor's tenure, the New York City corrections commission criticized PHS for a "pattern of providing are that repeatedly harmed inmates with acute physical or mental illnesses."

y.  On October 12, 2010, the American Civil Liberties Union filed a wrongful death lawsuit over the death of a jail inmate in St. Louis, Courtland Lucas, claiming he did not get proper care for a heart condition. Lucas died at the St. Louis City Justice Center in May 2009, five days after he was jailed on a probation violation.  According to the lawsuit, Lucas had chronic heart disease and was wearing a pacemaker when taken into custody.  The lawsuit contends Correctional Medical Services failed to provide proper medications or care for Lucas.

z.  November 19, 2010, *The St. Louis Post-Dispatch* reported that, "medical care [by Correctional Medical Services] in city jails, already the subject of wrongful-death lawsuits, was challenged... with an ACLU claim that an HIV-positive inmate was deprived of his medications for 17 days and got only sporadic care thereafter. A lawsuit filed in federal court by the American Civil Liberties Union of Eastern Missouri alleges that the John Doe plaintiff was deprived of his rights at both the Justice Center downtown and the Medium Security Institution on Hall Street."

Case ID: 131000201

aa. On March 18, 2011, a federal jury awarded a former county inmate $1.2 Million after PHS was found liable for not treating MRSA abscesses on his spine (see Fields v. Corizon Health, Inc., 09-CV-529 (M.D.Fla., 2009). PHS' medical staff told the inmate he had a staph infection and muscle strain, and prescribed Tylenol.

bb. In 2011, 26-year-old Kentucky county jail inmate Anthony Dwayne Davis died after PHS nurses refused to treat him and stated that Davis was "manipulating the system" – the nurses had their licenses suspended by Kentucky Board of Nursing.

cc. On March 18, 2011, after deliberating roughly four hours, a Middle District of Florida federal jury awarded Bret Allen Fields, Jr., North Fort Myers man, $1.2 million after he became paralyzed at the Perry County jail in 2007, finding the jail's medical provider, PHS, solely responsible. The jury found that PHS was deliberately indifferent to Mr. Allen's medical needs by only prescribing Tylenol.

dd. On March 31, 2011, *6NBC South Florida* reported that PHS settled a lawsuit for $500,000.00 that alleged its medical staff at Broward Correctional Institution in Fort Lauderdale, Florida failed to provide proper medical treatment for a "bipolar, clinically depressed with psychotic features" 18-year-old female inmate who committed suicide. On June 8, 2011, *NPR* highlighted the lawsuit on its *ROOT* program (see The Root: Inmate Health Care Another Kind of Prison, www.npr.org/2011/06/08/137055836/the-root-inmate-health-care)

ee. On May 25, 2011, *The New York Times* reported that the City of New York paid $2 Million to settle a lawsuit in the death of an inmate where PHS's employees exhibited deliberate indifference and the inmates' death "may have been prevented had he received timely medical diagnosis and treatment."

18

Case ID: 131000201

ff. On June 6, 2011, it was reported by *The Spokesman-Review*, a local newspaper in Idaho, that Correctional Medical Services was fined $382,000 for failing to provide the South Boise Women's Correctional Center without an OB/GYN for two years and failing to provide the Idaho Maximum Security Institution with a staff psychologist for at least eight months – during those periods the state had to pay for off-site health care;

gg. In a November 2011 Government Oversight Committee, Office of Program Evaluation & Government Accountability of Maine State Legislature issued its Final Report: *Health Care Services in State Correctional Facilities – Weaknesses Exist in MDOC's Monitoring of Contractor Compliance and Performance; New Administration is Undertaking Systemic Change*, wherein it found that found that Correctional Medical Services did not always comply with contract provisions requiring adherence to MDOC policies – even in the accredited facilities. Adherence to professional standards for medical care was also lacking in some areas. The Final Report noted that some prisoners did not receive standard medical services, such as physicals, dental services or sick call response within the timeframe required by MDOC's contracts. Persistent issues with proper administration of prescribed medications were also noted.

hh. On February 2, 2012, in the most scathing indictment of CORIZON to date, Dr. Mark Stern, a health care expert appointed by a federal court judge in Idaho in the long-running case of Balla, *et al.* v. Idaho State Board of Correction, 81-CV-01165 (BLW (D.Idaho, Feb. 2, 2012) concluded in a 94-page report that the medical care provided

19

by CORIZON at an Idaho state prison amounts to cruel and unusual punishment, amongst the deplorable findings were:

1) inmates who were terminal or required long-term care and were unable to move on their own were sometimes left in soiled linens, given inadequate pain medication and went periods without food and water;

2) medical staffers routinely failed to bring basic parts of resuscitation device – a ventilator mask for recue breathing – to inmates experiencing medical emergencies;

3) medical staffers not telling an inmate that he had cancer for seven months;

4) routinely denying inmates access to emergency medical services by denying medical care by telling guards to have the inmates make the care request the following day;

5) the death of an inmate because a CORIZON nurse failed to check vital signs and give him oxygen;

6) the report cited numerous other cases of deliberate indifference by CORIZON and PHS;

7) the report also found that CORIZON failed 23 of 33 audit categories in 2010 – and despite feedback and follow-up – failed 26 of 33 categories in 2011.

ii. On February 17, 2012, a jury awarded a former SCI-Albion inmate $312,000 after concluding that PHS provided negligent medical care.

jj. There are at least two other lawsuits alleging medical malpractice or negligence by PHS at SCI-Albion in death and mistreatment of inmates.

20

37. Since 1995, PHS has held a contract to provide physical healthcare services, including dental, hospital, laboratory, optometry, pharmacy, and specialist services, to inmates at correctional facilities throughout the City of Philadelphia in the Philadelphia Prisons Systems (PPS).

38. The contract was originally valued at $35.9 million and has since been increased through yearly amendments, reaching a total current value of $196 million.

39. Defendant, CORIZON f/k/a PHS, has repeatedly shown deliberate indifference through its failure to properly examine, diagnose and treat inmates in the PPS for yeas:

    a. On February 27, 2005, *The New York Times* published "Harsh Medicine: As Health Care Goes Private, 10 Days Can Be Death Sentence," outlining numerous lapses in medical treatment by PHS's employees that lead to numerous inmate deaths in several states and observed: "[i]n Philadelphia jails, state and federal court monitors in the late 1990's told of potentially dangerous delays and gaps in treatment and medication for inmates under Prison Health..."

    b. In 2009, a class of female inmates brought suit against CORIZON HEALTH, INC.alleging that the corporation failed to provide basic medical testing to properly detect MRSA, which caused the women long-term injury. Defendants, City of Philadelphia and CORIZON HEALTH, INC. settled the lawsuit for an unknown sum of money.

    c. In 2010, PPS inmate George Heard almost died due to the negligent and deliberate indifference of CORIZON's f/k/a PHS nurses at PPS who simply ignored his serious medical symptoms for more three weeks and told him he just needed Pepto Bismol while he bleed internally into his lungs and nearly drowned on his own blood. Fortu-

nately, Mr. Heard was transported to a private hospital just in time to have life-saving surgery.  Defendants, City of Philadelphia and CORIZON HEALTH, INC. settled Mr. Heard's lawsuit.

  d. Recently, another PPS inmate, Thomas Warren, brought suit making some claims strikingly similar to Mr. Williams.  In particular, it is alleged that Defendant, Dr. Mandel refused to examine him after PPS failed to transport him to the appointment in a timely manner.

  e. Currently, there is a lawsuit pending in this federal district court alleging that CORIZON f/k/a/ PHS's medical staff negligently and deliberately indifferently failed to discover that an inmate was a male after numerous medical examinations – that inmate was housed in the women's county prison for more than 16 months where he sexually abused, and maybe impregnated one female prisoner.

40. As part of it PPS contract, PHS was supposed to provide pharmaceutical supplies through an approved certified minority-, women- or disabled-owned vendors ("M/W/DSBE") subcontractor.

41. According to an investigation by the City of Philadelphia Office of Inspector General ("OIG"), "PHS used a pass-through woman owned business entity (WBE) to circumvent the City's minority, women, and disabled business entities (M/W/DSBE) requirements outlined in Mayoral Executive Order 02-05."

42. The OIG "investigation found that PHS contravened the City's anti-discrimination policies by subcontracting with an Indiana based first-aid supplier, JHK Inc., d.b.a. American Safety & First Aid (JHK), a pass-through WBE that was not approved by the City to provide the services that it was engaged to perform, and in fact provided no commercially

22

acceptable function. PHS also submitted paperwork that inflated JHK's role to represent compliance with the City's anti-discrimination policies."

43. "If PHS could not meet the M/W/DSBE participation ranges after making a showing to the City of a good faith effort, the City could grant a reduction in participation ranges. From May 2006 through March 2012, PHS never made a good faith showing or applied for a participation reduction. Instead, PHS attempted to meet the M/W/DSBE participation ranges by using a pass-through. In May 2006, PHS finalized a subcontract with JHK to provide pharmaceutical services as part of the PPS contract."

44. PHS repeatedly stated that it paid JHK, Inc. 40 percent of the value of its $196 million-a-year health-care contract.

45. "In exchange for the use of its name, PHS paid JHK 1% of the value of pharmaceutical services under the contract. PHS passed this 1% cost of the use of JHK's name to the City through monthly invoices that PHS submitted to the City, resulting in a loss to the City of over $400,000."

46. "JHK performed no commercially acceptable function as required by the City's anti-discrimination policies."

47. "The OIG investigation found that Secure Pharmacy Plus, LLC (Secure Pharmacy), a Tennessee based entity sharing the same parent corporation as PHS, subcontracted with JHK and provided pharmaceutical services to the PPS until April 30, 2007."

48. On April 30, 2007, Maxor National Pharmacy Services Corp. ("Maxor") and America Service Group, Inc. announced that they have executed an asset purchase agreement for the sale of certain assets of Secure Pharmacy Plus, LLC, an indirect subsidiary of America Service Group, Inc., to Maxor.  As a part of the transaction, Maxor and PHS, America

23

Service Group's primary operating subsidiary, entered into a long-term pharmacy services agreement pursuant to which Maxor will become the provider of pharmaceuticals and medical supplies to PHS.

49. "The OIG investigation further found that, from 2007 to 2011, PHS submitted provider agreements, monthly MBE listings, Solicitation for Participation and Commitment Forms, and correspondence to the City with incorrect information as to JHK's role. The documents represented that PHS contracted with JHK and paid JHK approximately 40% of the total contract amount for its services. However, from September 2008 through August 2011, PHS's required monthly invoices revealed that PHS never paid JHK 40% of the total contract amount. PHS's general ledgers reflecting money allocated by PHS each month demonstrate that from October 2007 to December 2011, JHK did not receive the 40% that PHS represented on the documentation provided to the City. Instead, JHK received a check each month from PHS for less than 1% of the contract price for services separately provided by Maxor simply for the use of its name on City contracting documents. Moreover, the $206,896 PHS paid JHK between September 2008 and August 2011 is far less than the $23,739,525.13, which PHS certified to the City on its monthly MBE reports submitted with its monthly invoices as money directly allocated to PHS's M/W/DSBEs for that period."

50. Prior to PHS using a pass-through woman owned business entity (WBE) to circumvent the City's minority, women, and disabled business entities (M/W/DSBE) requirements outlined in Mayoral Executive Order 02-05, Richard Hallworth, CORIZON's CEO and other decision-making officials at PHS, Secure Pharmacy Plus, LLC and JHK, Inc. entered into unlawful agreements with each other and their respective corporate entities to

24

submit fraudulent and deceptive provider agreements, monthly MBE listings, MBE reports, Solicitation for Participation and Commitment Forms, monthly invoices and correspondence to co-Defendant, City of Philadelphia, with incorrect information as to JHK's role.

51. Each month from October 2007 to December 2011, Richard Hallworth, CORIZON's CEO and other decision-making officials at PHS, Secure Pharmacy Plus, LLC and JHK, Inc. entered into unlawful agreements with each other and their respective corporate entities to submit fraudulent and deceptive provider agreements, monthly MBE listings, MBE reports, Solicitation for Participation and Commitment Forms, monthly invoices and correspondence to the City with incorrect information as to JHK's role.

52. Each month from October 2007 to December 2011, Richard Hallworth, CORIZON's CEO and other decision-making officials at PHS, Secure Pharmacy Plus, LLC and JHK, Inc. used interstate private and public communications facilities to knowingly or intentionally facilitate the commission of their fraud to submit fraudulent and deceptive provider agreements, monthly MBE listings, MBE reports, Solicitation for Participation and Commitment Forms, monthly invoices and correspondence to the City with incorrect information as to JHK's role.

53. Each month from October 2007 to December 2011, Richard Hallworth, CORIZON's CEO and other decision-making officials at PHS, Secure Pharmacy Plus, LLC and JHK, Inc. unlawfully entered into agreements with each other to falsely state that the companies were providing medical and pharmaceutical supplies that were not provided.

54. As a result of the fraud, PHS, Secure Pharmacy Plus, LLC and its parent corporation fraudulently earned nearly $78,000,000.00.

55. After PHS was caught lying, cheating and stealing, its co-Defendant, City of Philadelphia, slapped them on the wrist with a headline grabbing, but meaningless $1.85 million fine, which is only 0.0237 percent of the ill-gotten profits, and 0.0094 percent of the total value of the $196 million-a-year health-care contract.

56. After PHS's fraud made national headlines, CORIZON f/k/a PHS, put its spin machine to work and stated that it fully cooperated in the investigation.

57. There was no mention of CORIZON f/k/a PHS's $78,000,000.00 in illegal profits.

58. Also not mentioned was the harm to Mr. Williams and inmates similarly situated due to the lack of medical and pharmaceutical supplies that resulted from PHS, Secure Pharmacy Plus, LLC and CORIZON f/k/a PHS's lying, cheating and stealing.

**A Deplorable Culture of Deliberate Indifference in the Mistreatment of Prisoners By Defendant, City of Philadelphia**

59. Plaintiff hereby incorporates by reference, Paragraphs 1 through 59, as though they are fully set forth herein.

60. Notwithstanding the deplorable culture of corporate negligence and deliberate indifference in the mistreatment of prisoners by Defendants CORIZON, City of Philadelphia, Herdman, Giorla and city other policy and decision-makers, motivated mostly by their desire to hire the lowest cost prison healthcare provider, in deliberate indifference to the welfare and constitutional rights of Mr. Williams and thousands of prisoners similarly situated, repeatedly contracted with Defendant CORIZON.

61. By the time Defendant, City of Philadelphia, entered the contract with Defendants, PHS Correctional Healthcare, Inc. and CORIZON HEALTH, INC. that resulted in the injuries to Mr. Williams, Defendants, City of Philadelphia, Herdman, Giorla and other city policy

Case ID: 131000201

and decision-makers knew of Defendant, CORIZON's f/k/a PHS's, deplorable culture of deliberate indifference, but simply ignored it and chose the lowest bidder for inmate healthcare services without regard to Defendant, CORIZON's f/k/a PHS's, deplorable culture of deliberate indifference and corporate negligence.

62. According to information posted on PPS's Website, PPS has a "Policy and Audit Division (PAD), under the supervision of Commissioner of Prisons, and Chief Counsel, has been given the responsibility of providing the Philadelphia Prison System (PPS) staff guidance by developing comprehensive policies and procedures and assisting in training programs. The PAD assists correctional administrators by identifying organizational lapses and deficiencies. In addition, the PAD assists managers in planning, developing, implementing and constantly improving operational strategies and protects the public by conducting security audits and unannounced system checks...."

63. Prior to May 18, 2010, Defendants, City of Philadelphia, CORIZON HEALTH, INC. and Mandel, entered in contracts to provide medical services to inmates at PPS.

64. Mr. Williams reasonably believes and avers that he became either a direct party to the contract or a third-party beneficiary to the contracts between Defendants, City of Philadelphia, CORIZON HEALTH, INC. and Mandel and had legal rights to expect that each party to those contracts would act in good faith, perform as agreed, and would not cause his harm.

65. Mr. Williams reasonably believes and avers that, to date, Defendants, City of Philadelphia, Herdman, Giorla and other city policy and decision-makers within the government of the City of Philadelphia have recklessly and in deliberate indifference his rights, not in-

vestigated and/or audited Defendant, CORIZON's f/k/a PHS, for the quality of the healthcare services that it delivers at PPS.

66. Defendants, City of Philadelphia, Herdman, Giorla and city other policy and decision-makers failures to investigate and/or audit Defendant, CORIZON's f/k/a PHS, for the quality of the healthcare services that it delivers at PPS have existed in spite of hundreds of lawsuits against them and Defendant, CORIZON f/k/a/ PHS, alleging corporate negligence and medical malpractice.

67. Instead, Defendant Giorla attempts to defend the lack of constitutionally required medical care by in part claiming in a recent Philadelphia Daily News interview that "prisons deal with a large number of substance-addicted people who experience withdrawal."

68. When Mr. Williams originally filed his lawsuit on May 3, 2012, he was not a prisoner confined because he was residing at 2018 South Avondale Street, Philadelphia, PA 19142. This is confirmed by PPS records, in the form of "Philadelphia Prison System Classification, Movement and Records" dated August 1, 2012, show that Mr. Williams was not a prisoner on May 3, 2012.

69. Mr. Williams' *Pain Management* medical treatment records from April 20, 2012 through May 25, 2012 show that Mr. Williams was treated by his doctor on Friday, April 27, 2012 and Friday, May 4, 2012.

70. However, at all times relevant to this lawsuit, Mr. Williams was a sentenced inmate serving a county prison sentence.

71. For the purposes of this lawsuit, Mr. Williams entered the CFCF on January 26, 2009.

72. On that date, Mr. Williams was in good health and without any broken bones in his legs.

Case ID: 131000201

73. An undated PPS Master Problem List indicates that Mr. Williams has "B/L Carpal Tunnel Syndrome."

74. CORIZON HEALTH, INC. failed to treat Mr. Williams' "B/L Carpal Tunnel Syndrome."

75. At all times relevant hereto, Defendants, City of Philadelphia, Giorla, Gainey and Bryant had a custom, policy and practice of assigning inmates such as Mr. Williams a specific bed; Mr. Williams had no choice but to sleep in the assigned bed – otherwise he would face disciplinary action and placed in the "hole."

76. Mr. Williams reasonably believes and avers that the bunk beds that Defendants, City of Philadelphia, Giorla, Gainey and Bryant uses at CFCF and ASD are similar to the FSB-300-D Free Standing Double Bunk or the WMB-300 Wall Mount Single Bunk mounted as a double bunk bed.

77. Defendants, City of Philadelphia, Giorla, Gainey and Bryant do not provide ladders for either type of bunk bed.

78. It is well-known fact that prisoners must either jump from the top bunk or use the plastic foot lockers to get to the floor.

79. The plastic foot lockers are not designed to serve a substitute ladder.

80. By the time Defendants, City of Philadelphia, Giorla, Gainey and Bryant installed and maintained these bunk beds they were on notice by the U.S. Consumer Product Safety Commission Office of Compliance and other sources of consumer information of the risks that bunk beds without guard rails and ladders posed to prisoners.

81. On August 27, 2008, Mr. Williams was injured when he fell off the top bunk bed at CFCF.

29

82. By this time, Defendants, City of Philadelphia, Giorla, Gainey and Bryant were well-aware that the bunk beds that were installed in CFCF, ASD and elsewhere in the PPS were dangerous and posed serious and grave health risks to inmates because numerous inmates had been injured getting off the top bunks.

83. Mr. Williams reasonably believes and avers that Defendants, City of Philadelphia, Giorla, Gainey and Bryant recklessly and indifferently ignored these serious and grave health risks because the bunk beds they installed in CFCF, ASD and elsewhere in the PPS are the cheapest available on the market, or, at least, were provided by the company that bid the lowest to supply bunk beds to Defendants, City of Philadelphia, Giorla, Gainey and Bryant.

84. After he fell from the top bunk in 2008, Mr. Williams received some medical treatment and was given "BOTTOM BUNK BED ACCOMMODATIONS".

85. An assignment of "BOTTOM BUNK BED ACCOMMODATIONS" means that Mr. Williams should not be assigned a top bunk bed in the future.

86. On May 4, 2010, even though Mr. Williams had previously fallen from a top bunk bed, and had been given "BOTTOM BUNK BED ACCOMMODATIONS" by the PPS medical staff, Defendants, City of Philadelphia, Giorla, Gainey and Bryant and other unknown persons compelled Mr. Williams to sleep on a top bunk bed at ASD by assigning him to that bunk bed.

87. The top bunk bed was approximately five feet above the concrete floor.

88. Mr. Williams is five feet and nine inches tall.

89. During prison population count, Mr. Williams was compelled to stand on the concrete floor by correctional officers, or he was subject to discipline.

Case ID: 131000201

90.  As Mr. Williams was attempting to get off the top bunk bed for count he landed on the concrete floor and broke his left ankle and leg.

91.  In the Inmate Injury Report, Correctional Officer P. Harp indicated that "Inmate states while he was getting off his bunk, he twisted his left ankle on his foot locked."

92.  Although Mr. Williams was immediately taken to a PPS Medical Unit staffed and operated by Defendant, CORIZON f/k/a/ PHS employees, including Defendant, Dr. Boggio, his injury were misdiagnosed as a sprained ankle.

93.  During the examination of Mr. Williams, Defendant, Dr. Boggio twisted Mr. Williams' ankle and leg at an acute angle until Mr. Williams felt and heard a snap.

94.  Mr. Williams reasonably believes and avers that Defendant, Dr. Boggio's twisting of his ankle and leg at an acute angle caused the spiral fracture of the distal tibia that was diagnosed by other medical experts the next day.

95.  While Defendant, Dr. Boggio was examining Mr. Williams' leg, he was making a bet with a nurse that Mr. Williams' leg was not broken.

96.  In deliberate indifference to Mr. Williams' serious medical needs, he was given an "ACE" bandage; one of CORIZON HEALTH, INC.'s employees, a male African-American nurse attempted to make a splint out of cardboard.

97.  At the time Defendant, Dr. Boggio, misdiagnosed Mr. Williams' injury, Defendants, City of Philadelphia, CORIZON HEALTH, INC., Herdman, Hallworth, Wade and Pinney knew or should have known that Defendant, Dr. Boggio lacked the experience to make a proper diagnosis of a broken bone because he had failed to properly diagnose such injuries in the past.

31

98.   Upon reasonable information and belief, Mr. Williams avers that CORIZON HEALTH, INC. has a custom, policy and practice of not providing proper medical and pharmaceutical supplies to inmates throughout PPS, such as Mr. Williams, who suffer from broken bones.

99.   In deliberate indifference to Mr. Williams' serious medical needs, he was sent back to cell without any pain medication, or even ice.

100.  In deliberate indifference to Mr. Williams' serious medical needs, he was put back into the top bunk.

101.  Throughout the night, Mr. Williams made additional complaints to correctional officers about the pain and swelling.

102.  The PPS medical staff took x-rays of Mr. Williams' ankle and leg, but did not disclose the results to Mr. Williams.

103.  In fact, according to the Metadata from the x-rays, they were not taken until the next morning at approximately 10:45:55 a.m. and 11:02:43 a.m.

104.  At 3:00 p.m., on May 5, 2010, an unknown CORIZON HEALTH, INC. staff person made a notation on Mr. Williams' Medical Chart: "xray (5/5/10) spiral Fx dissal Tibia."

105.  Apparently, CORIZON HEALTH, INC. did not have a doctor on staff at PPS with the ability to read x-rays because they had to await a reading of the x-rays from Bustleton Radiology Associates Limited.

106.  On May 5, 2010, Dr. Michael Nalbantian, MD of Bustleton Radiology Associates Limited reported that Mr. Williams had "a spiral fracture through the distal third of the shaft of the tibial with slight lateral displacement of the distal fracture fragment.... also an

32

oblique fracture through the proximal shaft of the fibula with no angulation or separation or displacement of the fracture fragments."

107. When Dr. Nalbantian transmitted his report to Defendant Dr. Haque, in capital letters he indicated; "STAT REPORT-PHYSICIAN ATTENTION REQUIRED."

108. Mr. Williams reasonably believes and avers that at all times relevant hereto, Defendant Dr. Haque was the physician in charge of patient care at ASD.

109. Based upon reasonable information and belief, Mr. Williams avers that CORIZON HEALTH, INC. does not provide anything more than "ACE" bandages to inmates who suffer from broken leg bones.

110. In fact, Mr. Williams' PHS Orders indicate that Defendant, Dr. Haque noted on May 5, 2012: "ACE wrap left ankle."

111. Recently, between May 19, 2012 and May 29, 2012, a CORIZON HEALTH, INC. doctor at CFCF described as a "petite white male, approximately 5'-6" and 135lbs' provided the identical treatment to a pretrial detainee named Zachary Witte a/k/a Zachary White, who, like Mr. Williams, suffered from a broken leg.

112. On May 5, 2010 at 6:04 p.m., which was approximately 20 hours after breaking his leg, Mr. Williams was taken to ARIA HEALTH, Torresdale Campus for further examination.

113. During the trip, his broken leg was shackled, and he was compelled to walk with crutches.

114. There, Mr. Williams was initially interviewed by Colleen Marren, RN Triage, at that time Mr. Williams' pain level was "8/10."

115. According to notations made on Mr. Williams' medical chart, Mr. Williams "had out patient x[-]ray which showed spiral fx of left tibial."

33

116. RN Marren made a notation on Mr. Williams' medical chart that he had not received any prehospital care, nor had there been any triage interventions.

117. At 8:48, Lori Wielehowski, RN, noted that Mr. Williams' pain level was "10/10."

118. She gave him narcotic pain medications.

119. Shortly thereafter, Mr. Williams was given x-rays, which confirmed that he suffered from a "mildly displaced fracture of the proximal fibula as well as mildly displaced spiral fracture of the distal tibia."

120. Mr. Williams was discharged from ARIA HEALTH, Torresdale Campus at approximately and given specific instructions about the care of his leg.

121. Indeed, various records prove that Mr. Williams broke his leg on May 4, 2010. First, the initial PPS Inmate Injury Report states that Mr. Williams was injured on May 4, 2010 at 10:25 p.m. Second, the next day, May 5, 2010 Dr. Michael Nalbantian, a Radiologist at *Bustleton Radiology Associates, Limited*, informed Defendant, Dr. Hague by letter that Mr. Williams "Fell off top bunk 5/4/10" causing "a spiral fracture through the distal third of the shaft of the tibial with slight lateral displacement of the distal fracture fragment.... also an oblique fracture through the proximal shaft of the fibula with no angulation or separation or displacement of the fracture fragments." Third, at 3:00 p.m., Defendant Dr. Haque provides information on a PPS "Emergency Department Referral" form which states that Mr. Williams "Jumped from top bunk yesterday" and the x-ray indicates a "spiral fx distal tibial." Fourth, later on May 5, 2010, Mr. Williams' medical records from *ARIA HEALTH - Torresdale Campus, Emergency Department* state: "Patient jumped off top bunk yesterday injuring shin area. Patient had out patient xray which showed spiral fx of left tibial."

34

122. Those very instructions were included in Mr. Williams medical records that were sent back to Defendants, City of Philadelphia, CORIZON f/k/a/ PHS, RN Forbes and Boggio.

123. One of those medical instructions was that Mr. Williams need surgery to repair the 'spiral fracture of the distal tibial shaft."

124. The medical staff at ARIA HEALTH, Torresdale Campus recommended that Mr. Williams have surgery in "1-2 Days."

125. The medical staff at ARIA HEALTH, Torresdale Campus recommended that Mr. Williams' leg be placed in a cast.

126. The medical staff at ARIA HEALTH, Torresdale Campus recommended that Mr. Williams receive "[r]est, ice, compression, elevation."

127. Finally, the medical staff at ARIA HEALTH, Torresdale Campus prescribed a narcotic pain reliever for Mr. Williams.

128. When Mr. Williams returned form ARIA HEALTH, he was not taken to the infirmary or to see the medical staff; instead, he was sent directly to his cell.

129. Two days later, an unknown employee of CORIZON HEALTH, INC. made a notation on Mr. Williams' PHS Progress Notes chart that he needed a "referral to orthopedic."

130. This notation was consistent with medical staff at ARIA HEALTH, Torresdale Campus recommendation that Mr. Williams have surgery in "1-2 Days."

131. In deliberate indifference to Mr. Williams' serious medical needs, he was not referred to an orthopedic in "1-2 Days" by CORIZON f/k/a PHS's medical staff.

132. On May 6, 2010, at 1:20 a.m., an unknown CORIZON HEALTH, INC. staff person made a notation on Mr. Williams' Medical Chart: "referral to orthopedic."

35

133.  On May 10, 2010, Mr. Williams complained of numbness and burning sensations in his left leg, and was prescribed a narcotic pain reliever.

134.  According to an entry made on Mr. Williams' PPS Progress Notes form: "Dr. Boggio notified." Mr. Williams was not treated by Defendant, Dr. Boggio on that day.

135.  Again, in deliberate indifference to Mr. Williams' serious medical needs, he was not referred to an orthopedic in "1-2 Days" by CORIZON f/k/a PHS's medical staff.

136.  On May 11, 2010, at 2:00 p.m., an unknown CORIZON HEALTH, INC. staff person made a notation on Mr. Williams' Medical Chart: "Await orthopedic."

137.  Also on May 11, 2010, Defendant, Dr. Haque noted that Mr. Williams' leg had a "purple discoloration," but provided no medical services.

138.  On May 14, 2010, Defendant, Dr. Boggio also noted that Mr. Williams' leg had a "purple color," but provided no medical services.

139.  For more than 13 days, in deliberate indifference to Mr. Williams' serious medical needs, Defendants, City of Philadelphia, CORIZON f/k/a/ PHS, RN Forbes and Boggio did not attend to Mr. Williams' injuries.

140.  During this 13-day period of time, in deliberate indifference to Mr. Williams' serious medical needs, Defendants, City of Philadelphia and CORIZON f/k/a/ PHS did not refer Mr. Williams to any orthopedic doctor or surgeon.

141.  On May 18, 2010, in deliberate indifference to Mr. Williams' serious medical needs, the ASD Transport Unit (one Hispanic and one African-American) did not pick Mr. Williams up until 7:52 a.m.; Mr. Williams had an appointment to see Dr. Richard J. Mandel, an off-site orthopedic expert, at 8:00 a.m.

36

142.  PPS employee, Michele Logan emailed PPS employees Joseph Marsella, Maureen Heaney, Keri Grisby and Sgt. Brent alerting them that Mr. Williams was not transported in a timely manner.

143.  According to Mapquest, the shortest route from PPS to Dr. Mandel's office is 23.51 miles, which takes 48 minutes to drive. For an 8:00 a.m. appointment, Mr. Williams should have left PPS no later than 7:12 a.m.

144.  Mr. William was supposed to have surgery on that day.

145.  In deliberate indifference to Mr. Williams' serious medical needs, the ASD Transport Unit has custom, policy and practice of not transporting inmates to their medical appointments in a timely manner, and recklessly and deliberately causing their injuries to worsen and their pain to increase.

146.  On May 19, 2010, 15 days after Mr. Williams broke his left leg and suffered a "mildly displaced fracture of the proximal fibula as well as mildly displaced spiral fracture of the distal tibia," he was seen by Dr. Richard Mandel.

147.  On May 21, 2010, Mr. Williams had at MERCY SUBURBAN HOSPITAL surgery to repair his "mildly displaced fracture of the proximal fibula as well as mildly displaced spiral fracture of the distal tibia."

148.  The surgery was performed at MERCY SUBURBAN HOSPITAL by Dr. Richard Mandel.

149.  He repaired Mr. Williams injury by placing an "intramedullary rod and transverse screw fixation both proximally and distally."

150.  After Mr. Williams' surgery, on May 22, 2010, he returned to PPS; he was given specific instructions for the care of leg to ensure the best possible recovery and healing of his leg.

37

151. Amongst the specific written instructions: "Non weight bearing left leg... splint & crutches... sutures out in 2 weeks..."

152. On May 22, 2010, at 1300 hours, an unknown CORIZON HEALTH, INC. staff person made a notation on Mr. Williams' Medical Chart: "nurses not to change dressing until pt. is seen by ortho, appt. to be made for two weeks from today."

153. In deliberate indifference to Mr. Williams' serious medical needs, Defendant, CORIZON f/k/a PHS's medical employees and supervisory medical personnel such as Defendant, Dr. Haque at PPS did not schedule a follow-up orthopedic appointment two weeks after Mr. Williams' surgery.

154. Over the next several months, in deliberate indifference to Mr. Williams' serious medical needs, Defendant, CORIZON f/k/a PHS's, medical employees at PPS did nothing beyond prescribe Mr. William with pain medications

155. During that period of time, they recklessly removed Mr. Williams cast before it was supposed to be removed, failed to provide physical therapy or a bone stimulator and failed to provide any form of aquatic therapy.

156. Defendant CORIZON HEALTH, INC. did not provide a bone stimulator because it failed to enter into a contract with a medical and pharmaceutical supplier that would provide such equipment; instead, CORIZON HEALTH, INC. willfully and intentionally defrauded inmates such as Mr. Williams by entering into a sham contract with JHK, Inc.

157. Most of the time Defendant, CORIZON f/k/a PHS' employees would write in the PHS Progress Notes that Mr. Williams was doing fine, when, in fact, Mr. Williams in was in excruciating pain and his leg was wasting away and otherwise improperly healing.

38

158.    In deliberate indifference to Mr. Williams' serious medical needs, Defendants, City of Philadelphia and CORIZON HEALTH, INC. did not take Mr. Williams for his follow-up doctors' visits, as a result, Mr. Williams's stitches were not removed and the surrounding tissue grew over the stitches.

159.    According to the CORIZON HEALTH, INC. records, Mr. Williams' sutures were not removed until June 9, 2010, per a notation in his medical record by Ted Feldman, PAC.

160.    On June 9, 2010, Dr. Richard Mandel placed Mr. Williams' left leg in a short cast to facilitate healing.

161.    He was supposed to return to Dr. Richard Mandel in six weeks to have a longer cast put on his leg.

162.    On June 30, 2010, at 3:00 p.m., an unknown CORIZON HEALTH, INC. staff person made a notation on Mr. Williams' Medical Chart: "pt's ortho referral filled out 6/9/10. Still not faxed to MOD II. Another ortho referral done."

163.    Mr. Williams reasonably believes and avers that Defendant Dr. Haque was responsible for ensuring that his out-of-prison medical appointments were made in a timely manner.

164.    On July 6, 2010, Mr. Williams made a "SICK CALL REQUEST" for medical treatment, he stated: "My leg is swallon [sic] up from walking on it I'm not suppose to have any weight put on there Sgt. Cheeseborough made me walk on there with out my crutches."

165.    On July 8, 2010, Mr. Williams' left knee was x-rayed by CORIZON HEALTH, INC. medical staff at the request of Defendant, Dr. Haque.

166.    Neither Defendant CORIZON f/k/a PHS's medical staff nor Defendant, Dr. Haque informed Mr. Williams of the result of those x-rays; to this date, Mr. Williams experiences pain and inflammation in his left knee.

39

167. On July 21, 2010, Mr. Williams was transferred to Detention Center for an alleged "ortho consult 7/22/201".

168. He did not have an "ortho consult."

169. On July 21, 2010, Mr. Williams made a "SICK CALL REQUEST" for medical treatment, he stated: "My leg be itching real bad it keep swelling up everyday and it also be itching."

170. On July 29, 2010, Mr. Williams made a "SICK CALL REQUEST" for medical treatment, he stated: "My leg is swellon [sic] and this is my 5th slip I's putting in the Box."

171. On August 14, 2010, Mr. Williams made a "SICK CALL REQUEST" for medical treatment, he stated: "I need more meds for my leg it keep swelling up and itching real bad I put a slip in the Box last week so it has been over 5 Day and I haven't been seen (Also I am supposed to get some type of machine for my leg that the Doctor who took my cast off said that my leg was not healing and they wanted to try something else."

172. On August 23, 2010, Mr. Williams made a "SICK CALL REQUEST" for medical treatment, he stated: "My leg is still swollen it's been swollen for about 5 days straight now it is burning and itching (and for the past couple of days the nurse keep saying that they don't see my name in the book and having been giving me anything for the itching."

173. On August 23, 2010, an RN employed by CORIZON HEALTH, INC. staff person made a notation on Mr. Williams' Medical Chart: "R/O injury/infection of L leg.  PA referral."

174. In deliberate indifference to Mr. Williams' serious medical needs, Defendant, CORIZON f/k/a PHS's, employees did not make a referral for treatment of Mr. Williams' infected left leg.

40

175. In deliberate indifference to Mr. Williams' serious medical needs, Defendant, CORIZON f/k/a PHS's, employees did not provide any medical treatment of Mr. Williams' infected left leg.

176. On August 30, 2010, Defendant, Dr. Boggio made a notation on Mr. Williams' Medical Chart that: "Cast supposed to come out."

177. According to Defendant, Dr. Boggio, this was now an "Urgent" request.

178. Defendant, Dr. Kalu was responsible of ensuring that out-of-prison requests for medical treatment were approved.

179. However, as he has failed to do in many other cases, Defendant Dr. Kalu did not do his job, and Mr. Williams continued to experience great pain, suffering and permanent injury.

180. After Mr. Williams cast was finally removed, in deliberate indifference to Mr. Williams' serious medical needs, he was given crutches that did not have proper rubber tips, as a result Mr. Williams fell several times re-injuring his left leg.

181. As result of Defendant CORIZON HEALTH, INC.'s medical employees at PPS reckless disregard and deliberate indifference to Mr. Williams' health and welfare and their failure to follow basic medical practices, Mr. Williams leg failed to heal properly, and to this very day, he suffers from a permanent condition and needs additional surgery to correct his condition.

182. At all times relevant hereto, Defendant, Dr. Herdman, failed to exercise any supervisory oversight of Defendant, CORIZON f/k/a PHS's, medical employees at PPS, which proximately caused Mr. Williams to suffer unnecessary pain and suffering in deliberate indifference to Mr. Williams' constitutional rights.

41

Case ID: 131000201

183. At all times relevant hereto, Defendant, CITY OF PHILADELPHIA failed exercise any supervisory oversight of Defendant, CORIZON f/k/a PHS's, medical employees and Contractors at PPS, which proximately caused Mr. Williams to suffer unnecessary pain and suffering.

184. Defendant, City of Philadelphia failed to exercise any supervisory oversight of Defendant, CORIZON f/k/a PHS's and its medical employees at PPS which proximately caused Mr. Williams to suffer unnecessary pain and suffering in deliberate indifference to Mr. Williams' constitutional rights, was pursuant to a custom, policy and practice of selecting Defendant, CORIZON f/k/a PHS, as the lowest bidder for the provision of medical services at PPS when Defendant, City of Philadelphia knew or should have known that Defendant, CORIZON f/k/a PHS, would not provide proper medical treatment to inmates such as Mr. Williams, but would be deliberately indifferent to their medical needs and cause them injury.

185. On July 4, 2010, without legal justification, Defendant, Sgt. Cheeseborough, violently punched, choked and dragged Mr. Williams across a concrete and body slammed him onto the concrete floor in the sally port at ASD.

186. Defendant, Sgt. Cheeseborough and forced Mr. Williams to strip naked and stand on one leg for several hours.

187. When Mr. Williams objected to Defendant, Sgt. Cheeseborough's, mistreatment and strip search, Defendant, Sgt. Cheeseborough, stood about 6 inches from Mr. Williams face and told Mr. Williams to "shut the fuck up bitch-ass Nigger, before I ram something up your asshole."

42

188.  Defendant, Sgt. Cheeseborough, threatened to "throw" Mr. Williams in the "hole" if he filed a grievance.

189.  Defendant, Sgt. "John Doe" was present when Defendant, Sgt. Cheeseborough, stood about 6 inches from Mr. Williams face and told Mr. Williams to "shut the fuck up bitch-ass Nigger, before I ram something up your asshole" and threatened to "throw" Mr. Williams in the "hole" if he filed a grievance.

190.  Mr. Williams filed an oral grievance by complaining to a "white shirt" (and later a written grievance).

191.  At the time Mr. Williams field his grievance against Defendant, Sgt. Cheeseborough, he had an absolute right to file a grievance for being threatened, assaulted and sexually threatened by Defendant, Sgt. Cheeseborough.

192.  Mr. Williams' right to file his grievance Defendant, Sgt. Cheeseborough, he had an absolute right to file a grievance for being threatened, assaulted and sexually threatened is constitutionally protected.

193.  In retaliation, Mr. Williams was "thrown" in the "hole" by Defendant Cheeseborough.

194.  Defendant, Sgt. "John Doe" agreed with and approved all of the unlawful actions of Defendant, Sgt. Cheeseborough.

195.  Notwithstanding the undisputed fact that Mr. Williams was on crutches, bleeding and was suffering from bruises due to Defendant, Sgt. Cheeseborough's, violently punching, choking and dragging Mr. Williams across a concrete and body slamming him onto the concrete floor in the sally port, Defendant, "JOHN DOE", a so-called "Qualified Health Care Professional", after consulting with Defendant, Sgt. Cheeseborough and other correctional officers entered into an unlawful agreement with them to violate Mr. Williams

43

rights by recklessly and maliciously in deliberate indifference to Mr. Williams' serious medical needs fraudulently and maliciously signed a "Medical/Behavioral Health Review For Segregation Placement" form and stated that "I have examined the inmate's medical record to determine that there are no existing medical or dental needs at this time that contraindicates the segregation placement."

196.    Even though the so-called "Qualified Health Care Professional" was supposed to print his/her name on the form, he/she did not, thus hiding his/her identity.

197.    Mr. Williams was placed in the segregated housing unit at MOD-3.

198.    Mr. Williams was told by a Captain that PPS's Internal Affairs was investigating the matter, but never heard of any outcome of that investigation.

199.    At all times relevant hereto, when Mr. Williams filed grievances, he had a right to expect that Defendant, Giorla and other decision and policy-makers at PPS to ensure that his grievances would be processed properly, especially, since under some circumstances (e.g., if he was a "prisoner confined" at the time he commenced this lawsuit), Mr. Williams would have been precluded from filing a lawsuit if his grievances had not been exhausted.

200.    At this point, Mr. Williams reasonably believes and avers that his grievances were thrown in the trash or not processed by Defendant, Giorla and other decision and policy-makers at PPS pursuant to a custom, policy and practice of unlawfully covering up violent acts of misconduct by correctional officers, such as Defendant, Sgt. Cheeseborough.

201.    At this point, Mr. Williams reasonably believes and avers that his grievances were thrown in the trash or not processed by Defendant, Giorla and other decision and policy-

makers at PPS pursuant to a custom, policy and practice of unlawfully covering up violent acts of misconduct by correctional officers, such as Defendant, Joyner.

202. Mr. Williams was removed from MOD-3 after a couple days and transferred to CFCF.

203. CFCF Corrections Major Moore sent Mr. Williams to the medical unit at CFCF which is staffed by Defendant, CORIZON f/k/a PHS's, employees, but Mr. Williams was denied treatment because he did not have a pass even though it was obvious that Mr. Williams was injured.

204. Mr. Williams was sent back to the medical unit by Major Moore and Defendant, CORIZON f/k/a PHS's employees complained and Defendant, Joyner who was working in the receiving room at CFCF, grabbed Mr. Williams threw him out into the main hallway at CFCF.

205. Mr. Williams re-injured his leg causing it to bleed and swell.

206. There is a security camera in both the medical unit and main hallway at CFCF; Mr. Williams reasonably believes that officials at CFCF destroyed this evidence in active concert with Correctional Officer Joyner who assaulted him.

207. From that day forward, Mr. Williams was taken to the medical unit by Lt. Knight.

208. On October 22, 2010, by letter, Mr. Williams' former counsel placed Defendants, City of Philadelphia and CORIZON HEALTH, INC. on Notice of his claim.

209. Under Pennsylvania law, Defendants had a duty to employ reasonable efforts to investigate and settle this matter.

210. None of the Defendants bothered to attempt to investigate Mr. Williams' claims against them, nor did they offer to settle the matter.

Case ID: 131000201

211.  After Mr. Williams was released from PPS, he was seen by several doctors, nurses, phys-

ical therapists and pain managers, and diagnosed as follows:

a.  On September 10, 2010, Mr. Williams was examined that the University of Pennsyl-

vania Emergency Department.  There, he underwent a physical examination diagnos-

tic testing.  An x-ray study of his left tibia and fibula revealed an intramedullary rod

with tow proximal screws and three distal screws transfixing a healing obliquely ori-

ented fracture of the distal tibia; mild lateral displacement of the distal fracture frag-

ment; an oblique fracture of the left proximal fibula with callus formation and bony

bridging, indicative of healing; and diffuse soft tissue swelling surrounding the ankle.

b.  On September 30, 2010, Mr. Williams began his treatment with PAIN MANAGE-

MENT.  According to Dr. Raymond G. Wisdo, D.C., "[h]is diagnoses were assessed

to be a fracture of the tibia and fibula, carpal tunnel syndrome, a sprain/strain of the

wrist/hand, derangement of the meniscus of the knee, and a sprain/strain of the

knee/leg.  The injuries sustained to Mr. Williams' left leg during the accident on May

4, 2010 resulted in fractures of the tibia and fibula, which created a general weaken-

ing of the structural and soft tissue components of the area.  The damage to the mus-

cular, skeletal, and ligamentous structures is permanent and typically results in a loss

of optimum function.  Given this information, it is likely that this patient will suffer

from future problems involving, but not limited to, further degenerative changes of

these structures and/or soft tissues.  Based on the patient's history and examination

findings, Mr. Williams may endure future periodic aggravation of his symptoms re-

lated to these damaged tissues....  In addition to the medical expenses already in-

curred as a result of Mr. Williams' injuries, twenty thousand dollars is the projected

46

amount for further costs ($20,000.00). These estimated medical costs are derived from examination findings, ongoing physical therapy, pain management, and rehabilitation." Finally, to a degree of chiropractic certainty, Dr. Wisdo opined that: "All of the injuries described above, including all the subjective and objective findings, are the direct result of the personal injury accident that occurred on May 4, 2010. These injuries have caused a substantial impairment of a bodily function, which is both serious and permanent."

c. On March 15, 2011, Dr. Wisdo re-examined Mr. Williams. Notably, on that day, Mr. Williams' pain level was for his ankle and knee was a "10+ of 10." Further, Mr. Williams': "Range of Motion of the ankle revealed dorsi-flexion 0/20, plantar flexion 40/40, inversion 0/30 and eversion 0/20 with pain noted in all ranges of motion. On palpation, there was pain in the entire ankle and foot. Hypoesthesia was noted in at the L4, L5, and S1 dermatomes. On inspection, swelling of the ankle and foot was noted."

d. On September 29, 2011, Mr. Williams was examined by Dr. Anuj Prasad at MERCY HEALTH SYSTEM. Dr. Prasad opined that Mr. Williams was suffering from "bruising, crepitus, instability, locking, night pain, night-time awakening, numbness, popping, spasms, swelling in his left leg and tingling in the arms or weakness. Dr. Prasad ordered x-rays of Mr. Williams' leg and referred him to an orthopedic surgeon.

e. On October 14, 2011, Mr. Williams was examined by Marylouis Friedberger, PA-C, a Pain Management Specialist.

f. On March 26, 2012, Mr. Williams was re-examined by Dr. Wisdo. During that examination, Dr. Wisdo found that Mr. Williams that Mr. Williams' left "foot is deviat-

47

ed medially or inverted.  Hyperesthesia is noted and the left L4 dermatome." He recommended that Mr. Williams undergo "ultrasound, positive high volt galvanic stimulation... and low level laser therapy."

212.   On October 11, 2011, by letter, Mr. Williams' undersigned counsel placed Defendants, City of Philadelphia and CORIZON HEALTH, INC. on Notice of Intent To Sue.

213.   In early October 2011, Mr. Williams was arrested for a technical violation of his county probation sentence and remanded to PPS's CFCF.

214.   When Mr. Williams entered CFCF, he had cane, ankle brace and knee brace, which were taken and never replaced.

215.   On or about October 14, 2011, Mr. Williams was denied "Bottom Bunk Status" again by correctional officers at CFCF even though there were THREE "BOTTOM BUNK BED ACCOMMODATIONS" forms in his Permanent PPS File.

216.   As a direct and proximate result of being denied "BOTTOM BUNK BED ACCOMMODATIONS", Mr. Williams reinjured his left leg, ankle and foot while attempting to get off the top bunk onto the five feet below the bunk bed.

217.   On October 21, 2011, Mr. Williams made a "SICK CALL REQUEST" for medical treatment, he stated: "I broke my leg in several places and I have paper work with me stating my injury is serious and permanent and I have problems sleeping (I haven't been able to sleep in couple of days now can someone please see me ASAP This is my FIFTH Sick call slip I was told it take at least 5 days to be seen (well I haven't been seen yet and the social worker on B-1 put one in and I put in like four separate slips and I still haven't been seen."

48

Case ID: 131000201

218. From October 2011 through early-2012, Mr. Williams was incarcerated at CFCF; during that period of time, he made repeated requests for basic medical services for the treatment and management of pain due to his improperly healed broken ankle and leg.

219. Defendant, CORIZON f/k/a PHS's, employees repeatedly ignored Mr. Williams' requests for medical attention.

220. During that time, Correctional Officers compelled Mr. Williams to sleep on the top bunk and he re-injured his leg because he had jump from the top bunk during "count."

221. As a result of re-injuring his leg, Mr. Williams needed medical treatment, but was denied treatment by Defendant, CORIZON f/k/a PHS's medical staff because, according to an unidentified CORIZON HEALTH, INC. employee, he "has a lawsuit" pending against them.

222. In order to get the medical treatment, Mr. Williams had to file SEVEN Inmate Grievances between October 14, 2011 and October 28, 2011.

223. Mr. Williams' Grievances were sustained by a CFCF Deputy Warden on October 28, 2011; Mr. Williams was given some medical treatment, a new pair of crutches and "BOTTOM BUNK BED ACCOMMODATIONS", again.

224. At all times relevant to the Complaint, the conduct of all Defendants, their agents, contractors, servants and/or employees, was intentional, willful, recklessly, grossly negligently and deliberately indifferent with respect to Mr. Williams' rights under federal and state law.

225. At all times relevant to the Complaint, the conduct of all Defendants, their agents, contractors, servants and/or employees amounted to cruel and unusual punishment in viola-

49

tion of Mr. Williams' rights under the Eighth Amendment to the United States Constitution.

226. For the purposes of this lawsuit, Defendants, City of Philadelphia and CORIZON HEALTH, INC. are the recipients of millions of dollars in Title VI Funds that are used to fund the medical services and programs at PPS.

## IV. CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
### NEGLIGENCE

227. Plaintiff hereby incorporates by reference, Paragraphs 1 through 226, as though they are fully set forth herein.

228. All Defendants, in unlawful agreement and concert with each other, pursuant to a custom, policy and practice, have knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and deliberately indifferent to the rights of Plaintiff, to wit:

   a. Defendant, City of Philadelphia, and its policy and decision makers have been on notice of acts of deliberate indifference by CORIZON f/k/a PHS, its employees, nurses, doctors, independent contractors, contractors and sub-contractors for many years;

   b. Defendant, City of Philadelphia, and its policy and decision makers have knowingly, wrongfully, willfully, maliciously, wantonly, grossly negligent and indifferently failed to supervise its PPS policy and decision makers, contract administrators, Commissioners, Wardens, Deputy Wardens, Correctional Officers, employees and CORIZON HEALTH, INC. and their employees and Contractors or take any meaningful corrective action even though it could have by simply complying with the constitution, implementing additional training, implementing different disciplinary practices, implementing different hiring and firing practices, providing effective supervi-

50

sion and not covering up or ignoring past misconduct against citizens of Philadelphia and other official misconduct by PPS Policy Makers, Administrators, Commissioners, Wardens, Deputy Wardens, Correctional Officers, employees and CORIZON HEALTH, INC. and their employees and Contractors;

c.  As a result of Defendant, City of Philadelphia, and its policy and decision makers' knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, reck-lessly and deliberately indifferent concerted conduct, Plaintiff has suffered and con-tinues to suffer great pain and suffering, emotional distress, mental anguish, economic loss and loss of his rights;

d.  Defendant, Girola, has personally been on notice of acts of deliberate indifference by PPS employees and contractors for many years;

e.  Defendant, Girola, knowingly, wrongfully, willfully, maliciously, wantonly, grossly negligent and indifferently failed to supervise PPS Wardens, Deputy Wardens, Cor-rectional Officers, employees and CORIZON HEALTH, INC. and their employees and Contractors or take any meaningful corrective action even though it could have by simply complying with the constitution, implementing additional training, imple-menting different disciplinary practices, implementing different hiring and firing practices, providing effective supervision and not covering up or ignoring past mis-conduct against PPS inmates and other official misconduct by PPS Wardens, Deputy Wardens, Correctional Officers, employees and CORIZON HEALTH, INC. and their employees and Contractors, including, but not limited to Defendants, Herdman, Bog-gio, and Cheeseborough;

51

f. As a result of Defendant, Giorla', knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and deliberately indifferent concerted conduct, Plaintiff has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, economic loss and loss of his states' rights;

g. Defendants, City of Philadelphia, Giorla and Herdman, have personally been on notice of acts of deliberate indifference by PPS Correctional Officers, employees and CORIZON HEALTH, INC. and their employees and Contractors for many years;

h. Defendants, City of Philadelphia, Giorla and Herdman, knowingly, wrongfully, willfully, maliciously, wantonly, grossly negligent and indifferently failed to supervise PPS Correctional Officers, employees and CORIZON HEALTH, INC. and their employees and Contractors or take any meaningful corrective action even though it could have by simply complying with the constitution, implementing additional training, implementing different disciplinary practices, implementing different hiring and firing practices, providing effective supervision and not covering up or ignoring past misconduct against PPS inmates and other official misconduct by PPS Correctional Officers, employees and CORIZON HEALTH, INC. and their employees and Contractors; and

i. As a result of Defendants, City of Philadelphia, Giorla and Herdman's, knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and deliberately indifferent concerted conduct, Plaintiff has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, economic loss and loss of his rights.

Case ID: 131000201

229.    As a result of Defendants' knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and deliberately indifferent concerted conduct under the color of state law pursuant to an unconstitutional, custom policy and practice, Plaintiff has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish and loss of his rights.

## SECOND CLAIM FOR RELIEF
## CONSPIRACY TO VIOLATE PLAINTIFF'S RIGHTS

230.    Plaintiff hereby incorporates by reference, Paragraphs 1 through 229, as though they are fully set forth herein.

231.    Defendants, Sgt. Cheeseborough, was on duty as Correctional a "Qualified Health Care Professional" at ASD expressly or tacitly agreed to act and did expressly or tacitly act under the color of state law, knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and with deliberate indifference, in concert and conspiracy with each other and others to violate Plaintiff' constitutional rights as stated herein.

232.    As a result of Defendants, Sgt. Cheeseborough's knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and deliberately indifferent concerted conduct, Plaintiff has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish and loss of his rights.

## THIRD CLAIM FOR RELIEF
## FAILURE TO SUPERVISE DEFENDANT, CORIZON HEALTH, INC.
## DEFENDANT, CITY OF PHILADELPHIA

233.    Plaintiff hereby incorporates by reference, Paragraphs 1 through 232, as though they are fully set forth herein.

Case ID: 131000201

234. Defendant, City of Philadelphia, has been on notice of acts of deliberate indifference and negligence by CORIZON HEALTH, INC. and its employees and Contractors acts of deliberate indifference at PPS for many years.

235. Defendant, City of Philadelphia, has knowingly, wrongfully, willfully, maliciously, wantonly, grossly negligent and indifferently failed to supervise CORIZON HEALTH, INC. and their employees and Contractors or take any meaningful corrective action even though he could have by simply complying with the law, implementing additional training, implementing different disciplinary practices, implementing different hiring and firing practices, providing effective supervision and not covering up or ignoring past misconduct against PPS inmates and other official misconduct by CORIZON HEALTH, INC. and their employees and Contractors.

236. In this case, Defendant, City of Philadelphia's, knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and deliberately indifferent Plaintiff's rights failed to properly supervise CORIZON HEALTH, INC. and their employees and Contractors.

237. As a result of Defendant, City of Philadelphia's, knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and deliberately indifferent concerted conduct, Plaintiff has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish and loss of his rights.

## FOURTH CLAIM FOR RELIEF
### FAILURE TO SUPERVISE PPS EMPLOYEES AND CONTRACTORS
### DEFENDANT, CITY OF PHILADELPHIA

238. Plaintiff hereby incorporates by reference, Paragraphs 1 through 238, as though they are fully set forth herein.

Case ID: 131000201

239. Defendant, City of Philadelphia, has been on notice of acts of deliberate indifference by its employees and Contractors at PPS for many years.

240. Defendant, City of Philadelphia, has knowingly, wrongfully, willfully, maliciously, wantonly, grossly negligent and indifferently failed to supervise its employees and Contractors at PPS for many years, or take any meaningful corrective action even though he could have by simply complying with the law, implementing additional training, implementing different disciplinary practices, implementing different hiring and firing practices, providing effective supervision and not covering up or ignoring past misconduct against PPS inmates and other official misconduct by its employees and Contractors at PPS for many years.

241. In this case, Defendant, City of Philadelphia's, knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and deliberately indifferent Plaintiff's rights failed to properly supervise CORIZON HEALTH, INC. and their employees and Contractors amounted to cruel and unusual punishment.

242. As a result of Defendant, City of Philadelphia's, knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and deliberately indifferent concerted conduct, Plaintiff has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish and loss of his rights.

### FIFTH CLAIM FOR RELIEF
### FAILURE TO SUPERVISE – DEFENDANT, HERDMAN

243. Plaintiff hereby incorporates by reference, Paragraphs 1 through 242, as though they are fully set forth herein.

244. Defendant, Herdman, is the policy and decision maker for behavioral and mental health services at PPS.

55

Case ID: 131000201

245.   Defendant, Herdman, has been on notice of acts of deliberate indifference and negligence by PPS behavioral and mental health employees for many years.

246.   Defendant, Herdman, has knowingly, wrongfully, willfully, maliciously, wantonly, grossly negligent and indifferently failed to supervise CORIZON HEALTH, INC. and their employees and Contractors or take any meaningful corrective action even though he could have by simply complying with the constitution, implementing additional training, implementing different disciplinary practices, implementing different hiring and firing practices, providing effective supervision and not covering up or ignoring past misconduct against PPS inmates and other official misconduct by CORIZON HEALTH, INC. and their employees and Contractors.

247.   In this case, Defendant, Herdman, knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and deliberately indifferent Plaintiff's rights failed to properly supervise CORIZON HEALTH, INC. and their employees and Contractors.

248.   As a result of Defendant, Herdman's knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and deliberately indifferent concerted conduct, Plaintiff has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish and loss of his rights.

## SIXTH CLAIM FOR RELIEF
### FAILURE TO SUPERVISE – DEFENDANT, CORIZON HEALTH, INC.

249.   Plaintiff hereby incorporates by reference, Paragraphs 1 through 248, as though they are fully set forth herein.

250.   Defendants, CORIZON HEALTH, INC., and its policy and decision makers have been on notice of acts of deliberate indifference and negligence by CORIZON HEALTH, INC.'s employees and Contractors at PPS for many years.

56

Case ID: 131000201

251.   Defendants, CORIZON HEALTH, INC., and its policy and decision makers, Defendants, Kalu and Silva, have knowingly, wrongfully, willfully, maliciously, wantonly, grossly negligent and indifferently failed to supervise PHS employees or take any meaningful corrective action even though it could have by simply complying with the constitution, implementing additional training, implementing different disciplinary practices, implementing different hiring and firing practices, providing effective supervision and not covering up or ignoring past misconduct against PPS inmates and other official misconduct by PHS employees.

252.   In this case, Defendant, CORIZON HEALTH, INC., and its policy and decision makers, Defendants, Kalu and Silva, knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and deliberately indifferent Plaintiff's rights failed to properly supervise Defendants, Dr. Boggio, Dr. Haque and other medical staff at ASD and PPS amounted to cruel and unusual punishment.

253.   As a result of Defendant, CORIZON HEALTH, INC., and its policy and decision makers' knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and deliberately indifferent concerted conduct, Plaintiff has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish and loss of his rights.

## SEVENTH CLAIM FOR RELIEF
## BREACH OF CONTRACT

254.   Plaintiffs hereby incorporate by reference, Paragraphs 1 through 254, as though they are fully set forth herein.

255.   Defendants, CITY OF PHILADELPHIA and CORIZON HEALTH, INC. entered into contracts to provide medical services to Mr. Williams.

256. Mr. Williams was a direct party or a third party beneficiary to the contracts between Defendants, CORIZON HEALTH, INC.

257. Defendants, CORIZON HEALTH, INC. have, without legal justification, knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and deliberately indifferent to Mr. Williams' rights failed to provide medical services without deliberate indifference to Mr. Williams' constitutional rights.

258. Defendants, CORIZON HEALTH, INC.'s knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and deliberately indifferent concerted conduct, Mr. Williams has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, economic loss and loss of his rights.

## EIGHTH CLAIM FOR RELIEF
## RETALIATION – DEFENDANT, SGT. CHEESEBOROUGH

259. Plaintiff hereby incorporates by reference, Paragraphs 1 through 259, as though they are fully set forth herein.

260. After Mr. Williams was violently beaten and threatened by Defendant, Sgt. Cheeseborough, he made a verbal complaint and later filed a written grievance.

261. By making a verbal complaint and filing his grievance, Mr. Williams engaged in constitutionally protected activity.

262. Defendant, Sgt. Cheeseborough, made a frivolous and unfounded retaliatory disciplinary charge against Mr. Williams in response his valid verbal complaint and written grievance.

263. Mr. Williams was unlawfully place in the "hole" as a direct and proximate cause of Defendant, Sgt. Cheeseborough's, frivolous and unfounded retaliatory disciplinary charge against him.

58

Case ID: 131000201

264. Ultimately, Defendant, Sgt. Cheeseborough's, frivolous and unfounded retaliatory disciplinary charge against Mr. Williams was dismissed in Mr. Williams' favor.

265. As a result of Defendant's knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and deliberately indifferent concerted conduct, Plaintiff has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish and loss of his rights.

## NINTH CLAIM FOR RELIEF
## STATE CREATED DANGER – DEFENDANT, CITY OF PHILADELPHIA

266. Plaintiff hereby incorporates by reference, Paragraphs 1 through 266, as though they are fully set forth herein.

267. Defendant, City of Philadelphia, was responsible for the health, safety, well-being and provision of health care to Mr. Williams while he was a prisoner at PPS.

268. Defendant, City of Philadelphia, contracted with Defendants, CORIZON HEALTH, INC. and its policy and decision makers, Defendants, Hallworth, Pinney and Wade to provide health care services that Defendant, City of Philadelphia knew or should have known Defendant CORIZON HEALTH, INC. was not qualified to provide or would not provide.

269. Defendant, City of Philadelphia, expressly or tacitly agreed to act and did expressly or tacitly act under the color of state law, knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and with deliberate indifference, in concert and conspiracy with each other and others to violate Plaintiff's rights as stated herein.

270. As stated throughout this Complaint, Mr. Williams was harmed by Defendant, CORIZON f/k/a PHS, it employees and Contractors' failure provide proper medical treatment; the harm ultimately caused to Mr. Williams was foreseeable and fairly direct because Defendant, CORIZON f/k/a PHS, acted in willful disregard for Mr. Williams safety; and

Defendant, CORIZON f/k/a PHS, used its authority to create an opportunity for danger that otherwise would not have existed but for Defendant, City of Philadelphia contracting with Defendant, CORIZON HEALTH, INC.

271. As a result of Defendant's knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and deliberately indifferent concerted conduct, Plaintiff has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish and loss of his rights.

## TENTH CLAIM FOR RELIEF
## ASSAULT AND BATTERY – DEFENDANT, CHEESEBOROUGH

272. Plaintiff hereby incorporates by reference, Paragraphs 1 through 271, as though they are fully set forth herein.

273. Defendant, Sgt. Cheeseborough, knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and deliberately assaulted and battered Mr. Williams while acting under the color of state law to a degree that it amounted to cruel and unusual punishment.

274. Defendant, Sgt. Cheeseborough's, knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and deliberately indifferent assault of Mr. Williams was without legal authority or provocation and caused serious bodily injury and placed him in reasonable fear of continued bodily injury.

275. As a result of Defendant, Sgt. Cheeseborough's, knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and deliberately indifferent conduct, Mr. Williams has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his rights.

## ELEVENTH CLAIM FOR RELIEF
### STATE TORT LAW CLAIMS – NEGLIGENCE
### DEFENDANT, CORIZON f/k/a PHS

276.   Plaintiff hereby incorporates by reference, Paragraphs 1 through 275, as though they are fully set forth herein.

277.   Defendants, CORIZON f/k/a PHS, Dr. Boggio, Dr. Haque, and other CORIZON HEALTH, INC. employees and Contractors at PPS had a duty to comply with generally accepted standards of care in their medical evaluations and treatment of Mr. Williams.

278.   In negligently examining and treating Mr. Williams, Defendants, CORIZON HEALTH, INC., Dr. Boggio, Dr. Haque, and other CORIZON HEALTH, INC. employees and Contractors violated their duty of care to Mr. Williams.

279.   Defendants, CORIZON f/k/a PHS, Dr. Boggio, Dr. Haque, and other CORIZON HEALTH, INC. employees and Contractors violations of their duty of care to Mr. Williams was a direct and proximate cause and a substantial factor in bringing about Mr. Williams' damages outlined above, and, as a result, Defendants are liable to Plaintiff.

280.   Because these Defendant, CORIZON HEALTH, INC., Dr. Boggio, Dr. Haque, and other CORIZON HEALTH, INC. employees and Contractors were acting as agents, servants, and/or employees of Defendant, CORIZON HEALTH, INC., and were acting within the scope and course of their employment, and under the direct control and supervision of Defendants, CORIZON HEALTH, INC. and its policy and decision makers, Defendants, Hallworth, Pinney and Wade are liable to Mr. Williams on the basis of *respondeat superior* liability.

281.   As a result of Defendants' knowing, intentional, willful, malicious, wanton, grossly negligent, reckless and deliberately indifferent conduct, Mr. Williams has suffered and con-

61

tinues to suffer great pain and suffering, emotional distress, mental anguish and loss of his rights.

## TWELFTH CLAIM FOR RELIEF
### MEDICAL BATTERY – DEFENDANT, DR. BOGGIO

282. Plaintiff hereby incorporates by reference, Paragraphs 1 through 281, as though they are fully set forth herein.

283. Defendant, Dr. Boggio knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and deliberately assaulted and battered Mr. Williams while acting under the color of state law by twisting Mr. Williams' left leg at an acute angle until Mr. Williams felt and heard his leg snap.

284. Mr. Williams reasonably believes and avers that Defendant, Dr. Boggio's, twisting of Mr. Williams' ankle and leg at an acute angle caused the spiral fracture of the distal tibia that was diagnosed by other medical experts the next day.

285. Defendant, Dr. Boggio's, knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and deliberately indifferent assault of Mr. Williams was without legal authority or provocation and caused serious bodily injury and placed him in reasonable fear of continued bodily injury.

286. As a result of Defendant, Dr. Boggio's, knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and deliberately indifferent conduct, Mr. Williams has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his rights.

## THIRTEENTH CLAIM FOR RELIEF
### STATE TORT LAW CLAIMS – NEGLIGENCE
### DEFENDANT, DR. BOGGIO

62

Case ID: 131000201

287. Plaintiff hereby incorporates by reference, Paragraphs 1 through 286, as though they are fully set forth herein.

288. Defendant, Dr. Boggio, knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and deliberately negligently examined Mr. Williams while acting under the color of state law by twisting Mr. Williams' left leg at an acute angle until Mr. Williams felt and heard his leg snap.

289. Mr. Williams reasonably believes and avers that Defendant, Dr. Boggio's, twisting of Mr. Williams' ankle and leg at an acute angle caused the spiral fracture of the distal tibia that was diagnosed by other medical experts the next day.

290. Defendant, Dr. Boggio's, knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and deliberately indifferent examination of Mr. Williams caused serious bodily injury and placed him in reasonable fear of continued bodily injury.

291. As a result of Defendant, Dr. Boggio's, knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and deliberately indifferent conduct, Mr. Williams has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his rights.

## FOURTEENTH CLAIM FOR RELIEF
## STATE TORT LAW CLAIMS – NEGLIGENCE
## DEFENDANT, DR. HAQUE

292. Plaintiff hereby incorporates by reference, Paragraphs 1 through 291, as though they are fully set forth herein.

293. Defendant, Dr. Haque's, knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and deliberately negligently examined Mr. Williams while acting un-

63

der the color of state law by failing to ensure that Mr. Williams' medical appointments with doctors outside of PPS were made in a timely manner.

294. Defendant, Dr. Haque's, knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and deliberately indifferent scheduling of Mr. Williams outside doctor's appointments caused serious bodily injury and placed him in reasonable fear of continued bodily injury.

295. As a result of Defendant, Dr. Haque's, knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and deliberately indifferent conduct, Mr. Williams has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his constitutional and other state and federal rights.

296. Plaintiff seeks relief under state tort law in an amount not less than $150,000.00, attorney's fees, costs, expenses and interest.

### FIFTEENTH CLAIM FOR RELIEF
### STATE TORT LAW CLAIMS – PREMISES LIABILITY
### DEFENDANT, CITY OF PHILADELPHIA

297. Plaintiff hereby incorporates by reference, Paragraphs 1 through 296, as though they are fully set forth herein.

298. The aforesaid accident and resulting injuries and damages sustained by Mr. Williams was caused as a direct and proximate result of the negligence, carelessness and other liability-producing conduct of the Defendant, City of Philadelphia herein, its agents servants, and/or employees, which consisted of the following:

a. failing to install bunk beds without ladders;

64

b.   failing to warn of the dangerous condition which consisted dangerous bunk beds without ladders;

c.   failing to take all measures necessary under the circumstances to protect inmates lawfully upon said premises from a foreseeable risk of injury;

d.   failing to replace, repair, or otherwise make the bunk beds safe for inmates installing ladders form the floor to the top bunk;

e.   failing to exercise reasonable care to discover the dangerous condition of the bunk bed involved herein;

f.   negligence with respect to maintenance of said property, in that the dangerous condition was known, or should have been known to Defendant, , yet Defendant, permitted it to exist for an unreasonably long period of time in a dangerous condition without correcting same.

## SIXTEEN CLAIM FOR RELIEF
## RETALIATION – DEFENDANT, CORIZON HEALTH, INC.

299.   Plaintiff hereby incorporates by reference, Paragraphs 1 through 298, as though they are fully set forth herein.

300.   After Mr. Williams was not provided proper medical treatment by Defendant, CORIZON HEALTH, INC. its medical staff and Contractors, he made verbal complaints, filed written grievance and put Defendant, CORIZON HEALTH, INC., on Notice of Intent To Sue.

301.   By making verbal complaints, filing written grievance and putting Defendant, CORIZON HEALTH, INC. on Notice of Intent To Sue, Mr. Williams engaged in constitutionally protected activity under state law.

65

302. Defendant, CORIZON HEALTH, INC. malicious and recklessly retaliated against Mr. Williams and recklessly denied him medical care as result of him making verbal complaints, filing written grievance and putting Defendant, CORIZON HEALTH, INC. on Notice of Intent To Sue.

303. As a result of Defendant's knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and deliberately indifferent concerted conduct, Plaintiff has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish and loss of his rights.

## SEVENTEENTH CLAIM FOR RELIEF
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## ALL DEFENDANTS

304. Plaintiff hereby incorporates by reference, Paragraphs 1 through 303, as though they are fully set forth herein.

305. All Defendants' conduct was grossly reckless and beyond the bounds of conduct tolerated in a civilized society, even in a prison environment because Plaintiff was a prisoner.

306. As a result of all Defendants' knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and deliberately indifferent concerted conduct, Mr. Williams suffered and continues to suffer great pain and suffering, emotional distress, mental anguish and loss of his rights.

## V. DEMANDS FOR JUDGMENT AND PUNITIVE DAMAGES

307. Plaintiff hereby incorporates by reference, Paragraphs 1 through 306, as though they are fully set forth herein.

308. On all Claims for Relief, Plaintiff demands judgment in their favor and damages in an amount not less than $2,500,000.00 on all claims for relief, and reasonable attorney's fees, costs, expenses and interest.

66

Case ID: 131000201

309.    On all Claims For Relief, Plaintiff demands punitive damages in an amount not less than $2,500,000.00 on all claims for relief, and reasonable attorney's fees, costs, expenses and interest because Defendants' actions exceeded the normal standards of decent conduct and were malicious, willful, oppressive, outrageous and unjustifiable.

310.    Plaintiff demands other just relief as the Court may award.

## VI. DEMANDS FOR JURY TRIAL

311.    Plaintiff hereby incorporates by reference, Paragraphs 1 through 310, as though they are fully set forth herein.

312.    On all facts and claims for relief asserted, Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff demands judgment compensatory damages and punitive damages on all facts and claims for relief herein asserted, and upon judgment, reasonable attorney's fees, all costs, expenses and interest.

Respectfully submitted,

*s/ Geoffrey V. Seay*

Geoffrey V. Seay, Esquire
Attorney at Law
1315 Walnut Street, Suite 602
Philadelphia, PA 19107
Attorney For Tony Williams
November 25, 2013
(215) 893-1480
(215) 892-1483 (Fax)
seaylaw@aol.com

67

Case ID: 131000201

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA -- DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:  2018 South Avondale Street, Philadelphia, PA 19142

Address of Defendant:   City of Philadelphia Law Department, 1515 Arch Street, 14th Floor, Philadelphia, PA 19102

Place of Accident, Incident or Transaction:  Philadephia Prison System, 7901 State Road, Philadelphia, PA 19136
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)).   Yes ☐   No ☐

Does this case involve multidistrict litigation possibilities?   Yes ☐   No ☐
*RELATED CASE IF ANY:*

Case Number: 12-2412 _____   Judge Hon. Legrome D. Davis _____   Date Terminated: 09/09/2013 _____

Civil cases are deemed related when yes is answered to any of the following questions:

1.   Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
      Yes ☐   No ☐

2.   Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☑   No ☐

3.   Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?   Yes ☐   No ☐

CIVIL: (Place   in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1.   ☐   Indemnity Contract, Marine Contract, and All
2.   ☐   FELA
3.   ☐   Jones Act – Personal Injury
4.   ☐   Antitrust
5.   ☐   Patent
6.   ☐   Labor-Management Relations
7.   ☑   Civil Rights
8.   ☐   Habeas Corpus
9.   ☐   Securities Act(s) Cases
10.  ☐   Social Security Review Cases
11.  ☐   All Other Federal Questions Cases (Please specify)

B. *Diversity Jurisdiction Cases:*

Other  Contracts   1. ☐   Insurance Contract and Other Contracts
2. ☐   Airplane Personal Injury
3. ☐   Assault, Defamation
4. ☐   Marine Personal Injury
5. ☐   Motor Vehicle personal Injury
6. ☐   Other Personal Injury (Please specify)
7. ☐   Products Liability
8. ☐   Products liability - Asbestos
9. ☐   All other Diversity Cases
(Please specify)

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, Christopher Rider _____, counsel of record do hereby certify:

☐   Pursuant to Local Rule 53.3 A, civil rights cases are excluded from arbitration.

☐   Pursuant to Local Civil  Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐   Relief other than monetary damages is sought.

DATE: 12/20/14 _____   _____   307265 _____
                              **Christopher Rider, Esquire**   Attorney I.D. #
                              Attorney-at-Law

**NOTE:**  A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 12/20/14 _____   _____   307265 _____
                              **Christopher Rider, Esquire**   Attorney I.D. #
                              Attorney-at-Law

CIV. 609 (4/03)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TONY WILLIAMS | : | Civil Action |
| 2018 South Avondale Street | : | |
| Philadelphia, PA 19142, | : | No. |
|         Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CORIZON HEALTH, INC. | : | *Formerly* |
| f/k/a PHS CORRECTIONAL HEALTHCARE, INC. | : | COURT OF COMMON PLEAS |
| 105 Westpark Drive, Suite 200 | : | PHILADELPHIA COUNTY |
| Brentwood, TN 37027-5010 | : | |
| | : | OCTOBER TERM, 2013 |
| CITY AND COUNTY OF PHILADELPHIA | : | NO. 201 |
| c/o City of Philadelphia Law Department | : | |
| 1515 Arch Street, 14th Floor | : | |
| Philadelphia, PA 19102-1595; | : | |
| | : | |
| COMMISSIONER LOUIS GIORLA | : | |
| In His Individual and Official Capacities | : | |
| CITY AND COUNTY OF PHILADELPHIA | : | |
| Philadelphia Prison System | : | |
| 7901 State Road | : | |
| Philadelphia, PA 19136; | : | |
| | : | |
| CLYDE D. GAINEY | : | |
| In His Individual and Official Capacities | : | |
| CITY AND COUNTY OF PHILADELPHIA | : | |
| Philadelphia Prison System | : | |
| 7901 State Road | : | |
| Philadelphia, PA 19136; | : | |
| | : | |
| KAREN BRYANT | : | |
| In Her Individual and Official Capacites | : | |
| CITY AND COUNTY OF PHILADELPHIA | : | |
| Philadelphia Prison System | : | |
| Alternative Sentencing Detention | : | |
| 8101 State Road | : | |
| Philadelphia, PA 19136; | : | |
| | : | |
| JOHN P. DELANEY | : | |
| In His Individual and Official Capacities | : | |
| CITY AND COUNTY OF PHILADELPHIA | : | |
| Philadelphia Prison System | : | |
| Curran-Fromhold Correctional Facility | : | |
| 7901 State Road | : | |
| Philadelphia, PA 19136; | : | |
| | : | |
| DR. BRUCE HERDMAN | : | |
| In His Individual and Official Capacities | : | |
| CITY AND COUNTY OF PHILADELPHIA | :· | |
| Philadelphia Prison System | : | |
| 7901 State Road | : | |
| Philadelphia, PA 19136; | : | |

| | |
|---|---|
| CORRECTIONAL SGT. ANTHONY CHEESEBOROUGH | : |
| In His Individual and Official Capacities | : |
| CITY AND COUNTY OF PHILADELPHIA | : |
| Philadelphia Prison System | : |
| 7901 State Road | : |
| Philadelphia, PA 19136; | : |
| | : |
| CFCF CORRECTIONAL OFFICER JAMELL JOYNER | : |
| In His Individual and Official Capacities | : |
| CITY AND COUNTY OF PHILADELPHIA | : |
| Philadelphia Prison System | : |
| 7901 State Road | : |
| Philadelphia, PA 19136; | : |
| | : |
| DR. JOSE LUIS BOGGIO | : |
| In His Individual and Official Capacities | : |
| CORIZON HEALTH, INC. | : |
| f/k/a PHS CORRECTIONAL HEALTHCARE, INC. | : |
| Philadelphia Prison System | : |
| 7901 State Road | : |
| Philadelphia, PA 19136; | : |
| | : |
| DR. MOHAMMED HAQUE | : |
| In His Individual and Official Capacities | : |
| CORIZON HEALTH, INC. | : |
| f/k/a PHS CORRECTIONAL HEALTHCARE, INC. | : |
| Philadelphia Prison System | : |
| 7901 State Road | : |
| Philadelphia, PA 19136  ; | : |
| | : |
| MARY SILVA, VICE PRESIDENT | : |
| In Her Individual and Official Capacities | : |
| CORIZON HEALTH, INC. | : |
| f/k/a PHS CORRECTIONAL HEALTHCARE, INC. | : |
| 105 Westpark Drive, Suite 200 | : |
| Brentwood, TN 37027-5010 | : |
| | : |
| Dr. EKE KALU, M.D. | : |
| In His Individual and Official Capacities | : |
| CORIZON HEALTH, INC. | : |
| f/k/a PHS CORRECTIONAL HEALTHCARE, INC. | : |
| 105 Westpark Drive, Suite 200 | : |
| Brentwood, TN 37027-5010 | : |
| | : |
| DR. JAMES ARNONE | : |
| In His Individual and Official Capacities | : |
| CORIZON HEALTH, INC. | : |
| f/k/a PHS CORRECTIONAL HEALTHCARE, INC. | : |
| Philadelphia Prison System | : |
| 7901 State Road | : |
| Philadelphia, PA 19136;  and | : |
| Defendants. | : |

## CASE MANAGEMENT TRACK DESIGNATION FORM

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a

defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus -- Cases brought under 28 U.S.C. §2241through § 2255.          ( )

(b) Social Security -- Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.              ( )

(c) Arbitration -- Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos -- Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                       ( )

(e) Special Management -- Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                          ( )

(f) Standard Management -- Cases that do not fall into any one of the other tracks.   ( X )

| | | |
|---|---|---|
| 12/20/13 | Christopher Rider, Esq. | |
| Date | | Attorney for |
| (215) 683-5444 | (215) 683-5397 | christopher.rider@phila.gov |
| Telephone | FAX Number | E-mail Address |

(Civ. 660) 10/02